**PAISLEY PARK ENTERPRISES, INC., et al., Plaintiffs,**

v.

**UPTOWN PRODUCTIONS d/b/a Uptown, et ano., Defendants.**

**No. 99 Civ. 1439(LAK).**

United States District Court, S.D. New York.

June 29, 1999.

Michael Elkin, Teena Kim, Thelen Reid & Priest LLP, New York City, for plaintiffs.

David Lee Evans, C. Alex Hahn, Hanify & King, Syracuse, NY, for defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This matter now presents the question whether the Court should permit defendants to videotape the deposition of one of the plaintiffs, Prince Rogers Nelson, better known to music fans as Prince or The Artist Formerly Known As Prince, and, if so, on what terms. The parties have presented the matter to the Court by letters and argued it via telephone conference call. They have agreed to submit the matter for binding decision by the Court without a more elaborate record and to abide by the result without seeking any appellate remedies.

### Facts

Nelson, the parties contend, is a well known entertainer and celebrity who, among other things, associates his persona with a symbol for which he claims to have registered copyright. In addition to his more immediate entertainment activities, Nelson or those associated with him operate a web site. Defendants publish *Uptown*, an unofficial "fan" magazine, and operate a web site, both devoted to Nelson. Without getting into detail unnecessary to resolution of the issue now before the Court, plaintiffs here sue defendants for copyright and trademark infringement and

on other theories, the gist of the case being that the defendants are improperly making unauthorized use of Nelson's name, likeness, photographs and other intellectual property. More broadly, plaintiffs contend that defendants have "created an entire business based on exploiting [Nelson]'s image and persona to their own economic benefit." Defendants have counterclaimed for abuse of process and declaratory relief. On or about May 21, 1999, defendants noticed Nelson's deposition. The notice provided that the examination would be recorded on videotape and audiotape.

Plaintiffs acknowledge that defendants are entitled to a live deposition of Nelson. They resist only its videotaping, arguing that defendants' real motive for videotaping Nelson's testimony is to generate more content for their conventional and web publishing activities, more publicity for themselves, and greater economic returns. In short, they apprehend that any videotape of the deposition will be used "to usurp from the public figure [Nelson] the very business opportunities that give rise to the interest [that would be] reported about." In other words, they contend that a videotape would serve no legitimate litigation purpose, that the effort to create such a record of the deposition is commercially motivated, and that the creation and dissemination of such a tape would undermine plaintiffs' own commercial interests— interests for which they seek the Court's protection.

There is a substantial factual basis for plaintiffs' concerns. Attachment A to plaintiffs' letter to the Court demonstrates that this lawsuit is a principal focus of the defendants' web site. The pleadings, defendants' notice of Nelson's deposition, and press releases concerning the case all are on line. Moreover, when asked during the conference call whether defendants would agree that they would not disseminate or make other non-litigation use of a videotape of the deposition, defendants' counsel responded that he was not authorized to do so. Thus, there is every reason to believe that defendants' motive in seeking to videotape the deposition is at least in part to generate notoriety for themselves and their business ventures by making non-litigation use of the videotape, although the Court to be sure has no basis for questioning their counsel's representation that he believes that the videotape would be useful at trial as well.

*Discussion*

Rule 30(b)(2) of the Federal Rules of Civil Procedure provides that:

> "The party taking the deposition shall state in the notice the method by which the testimony shall be recorded. *Unless the court orders otherwise,* it may be recorded by sound, sound-and-visual, or stenographic means, and the party taking the deposition shall bear the cost of the recording. Any party may arrange for a transcription to be made from the recording of a deposition taken by non-stenographic means." (Emphasis added)

The rule thus permits both video- and audio taping of depositions absent contrary order of the Court.

In this case, two factors arguably cut in favor of the defendants. Nelson, unlike the former CIA director who succeeded in blocking the videotaping of his deposition in *Westmoreland v. CBS, Inc.,*[1] is the plaintiff who invoked the judicial process to begin with, not a non-party witness dragged unwillingly into a dispute between others. Second, the Court accepts that there is at least some *bona fide* litigation purpose to the video recording of Nelson's testimony. These considerations, however, do not necessarily sweep the field.

---

1. 584 F.Supp. 1206 (D.D.C.1984), *aff'd in part, rev'd in part,* 770 F.2d 1168 (D.C.Cir. 1985).

To begin with, it is readily apparent that the defendants intend to use any videotape for purposes entirely unrelated to the litigation as well as for the lawsuit itself. Rule 30(b)(2) was amended to permit videotaped depositions as a matter of routine in recognition of the fact that videotapes are a means of presenting deposition testimony to juries that is superior to readings from cold, printed records.[2] It was not intended to be a vehicle for generating content for broadcast and other media.[3] Hence, defendants' likely use of any videotape for purposes unrelated to the resolution of the dispute that is the subject of this lawsuit cuts in plaintiffs' favor.

More broadly, there is another public interest at stake here. The judicial branch of government, insofar as it deals with civil cases, is a system for the resolution of what usually are private disputes.[4] While many members of the public have an interest in every imaginable detail about the life of a rock star, virtually all have an interest in ensuring that everyone in our society have access to a fair and impartial judicial system without having to pay too high a price of admission in the form of the surrender of personal privacy. Thus, courts must be vigilant to ensure that their processes are not used improperly for purposes unrelated to their role.

Given the existence of a legitimate litigation purpose for taping the deposition, the Court will permit the videotaping. But the videotape may be used solely for purposes of this litigation.[5] To ensure that this is so, the Court will require the following conditions, which are to be embodied in a more detailed order:

1. The parties shall select the videographer jointly.

2. Only the original videotape will be made. Copies or other video or audio recordings are prohibited.

---

**2.** *Cf., e.g., United States v. Tunnell,* 667 F.2d 1182, 1188 (5th Cir.1982); *Weiss v. Wayes,* 132 F.R.D. 152, 154 (M.D.Pa.1990).

**3.** The Supreme Court has noted the danger that a court's power to resolve cases may become the involuntary instrument of commercial interests. In *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), tapes made in the White House during the Nixon administration were subpoenaed for use in a criminal trial. After the tapes were played in court, several broadcasters applied to copy, broadcast and sell portions of the tapes to the public. In discussing that application, the Court noted "the crucial fact that [the broadcasters] require[d] a court's cooperation in furthering their commercial plans." *Id.* at 602–03, 98 S.Ct. 1306. The Court went on to say that where evidence was given only in response to a court's demands, in that case a subpoena, the court

"has a responsibility to exercise an informed discretion as to the release of the tapes, with a sensitive appreciation of the circumstances that led to their production. This responsibility does not permit copying upon demand. Otherwise there would exist a danger that the court could become a partner in the use of the subpoenaed material 'to gratify private spite or promote public scandal,' [cite omitted] with no corresponding assurance of public benefit." *Id.* at 603, 98 S.Ct. 1306.

The Court denied the application to copy and broadcast the tapes.

In a more recent case garnering intense publicity, the Eighth Circuit expressed similar concerns, writing that "as a matter of public policy, ... courts should avoid becoming the instrumentalities of commercial or other private pursuits." *United States v. McDougal,* 103 F.3d 651, 658 (8th Cir.1996), *cert. denied sub nom. Citizens United v. U.S.,* —— U.S. ——, 118 S.Ct. 49, 139 L.Ed.2d 15 (1997).

**4.** Any number of civil cases involve characteristics that take them out of the category of purely private matters. Certainly those in which the government itself is a party are a ready example. Moreover, some cases involve matters affecting public health, safety or welfare which might make it inappropriate to regard them as purely private even where the litigants are not "public" in any sense.

**5.** *See Inhofe v. Wiseman,* 772 P.2d 389 (Okla. 1989) (permitting videotaped deposition but imposing protective order to prevent non-litigation use); *see also Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Nat'l Caucus of Labor Comm.,* 525 F.2d 323 (2d Cir.1975) (denying mandamus where district court barred videotaping deposition in view of potential abuse).

3. The parties shall select a mutually agreeable non-party (the "Custodian") who will attend the deposition and take custody of each video cassette as soon as it is recorded. The order will direct the Custodian to safeguard and to permit no one to view, audit or copy the cassette(s) absent further order of the Court.

4. The Custodian shall submit to the jurisdiction of the Court for purposes of enforcing the provision of the order directed to the Custodian.

The parties are urged to agree upon the form of an order containing the foregoing provisions. Settle order, on or before July 6, 1999, on consent or, in default of consent, on two days' notice.

SO ORDERED.