Pushpa TOPO, Plaintiff,

v.

Ashwin DHIR and Nisha Dhir, Defendants.

No. 01 Civ. 10881 (JSM) (RLE).

United States District Court, S.D. New York.

Sept. 13, 2002.

Michael Joel Wishnie, Ranjana Natarajan, Washington Square Legal Services, New York City, for plaintiff.

Allan Young, Porzio, Bromberg & Newman, PC, New York City, for defendants.

## OPINION AND ORDER

ELLIS, United States Magistrate Judge.

### I. INTRODUCTION

Before this Court is a motion by plaintiff Pushpa Topo, seeking a protective order bar-

ring defendants from inquiring into plaintiff's immigration status in accordance with the Federal Rules of Civil Procedure 26(c). For the following reasons, plaintiff's motion seeking a protective order is **GRANTED**.

## II. BACKGROUND

Plaintiff brings this cause of action against the defendants, alleging among other thing, violations of the Alien Tort Claims Act ("ATCA"), trafficking and involuntary servitude, false imprisonment, and various violations of federal and state minimum wage laws. Plaintiff, a non United States citizen, alleges that defendants recruited her for a domestic servant position. In her complaint, plaintiff alleges that the defendants paid her the equivalent of $0.22 per hour for her first eight months of employment, and a total of $50 for her remaining seventeen months of service. She alleges that she worked for the defendants seven days a week, averaging between 119 and 133 hours per week. Defendants have indicated that during the discovery process, and in particular during plaintiff's deposition, they will inquire into her immigration status. Plaintiff brings this motion to bar defendants from taking such action, alleging that defendants are attempting to exploit the discovery process to intimidate plaintiff into discontinuing prosecution of her claims.

## III. DISCUSSION

### A. Standard for Granting Protective Order

According to Rule 26(b) of the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R. Civ.P. 26(b)(1). Generally, all material is deemed discoverable under this rule unless an applicable privilege applies. *See Pearson v. Miller,* 211 F.3d 57, 65 (3d Cir. 2000). However, under Rule 26(c), a judge may issue a protective order limiting the scope of discovery "to protect a party or person from annoyance, embarrassment, oppression or under burden or expense." Fed.R. Civ.P. 26(c). In granting a protective order, "a district court judge must articulate

its reasons for granting a protective order sufficient for appellate review." *McCarthy v. Barnett Bank of Polk County,* 876 F.2d 89, 91 (11th Cir.1989) (citation omitted). Under Rule 26(c), the burden of persuasion is on the party seeking the protective order. *See Dove v. Atlantic Capital Corp.,* 963 F.2d 15, 19 (2d Cir.1992) (citation omitted). However, circuits are split as to the burden of proof. Some circuits have held that the party seeking the protective order must demonstrate its need for protection based on "specific examples or articulated reasoning." *Cipollone v. Liggett Group Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987); *United States v. Garrett,* 571 F.2d 1323, n. 3 (5th Cir.1978); 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2035 (1970 & Supp.1985). Those circuits will not grant a protective order for unsubstantiated broad allegations of harm. *Id.* Indeed, some courts within this district have followed this line of reasoning. *See Bridges v. Eastman Kodak Co.,* 850 F.Supp. 216, 223 (S.D.N.Y.1994)(Carter, J.). However, other circuits have dispensed with the specificity requirement, only demanding that the moving party show good cause. In *E.E.O.C. v. National Children's Center, Inc.,* 98 F.3d 1406, 1411 (D.C.Cir.1996), the Court overturned its prior rulings demanding specificity in issuing protective orders. Relying on *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), the D.C. Circuit "rejected the argument that protective orders must be supported by concrete factual showings," and required only a showing of "good cause." *Id.* A number of courts have come to the same conclusion. *See Jepson, Inc. v. Makita Electric Works, Ltd.,* 30 F.3d 854, 858 (7th Cir.1994); *Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 535 (1st Cir.1993). Some courts within this district have dispensed with using the specificity language, and have only sought "good cause" to grant a protective order. *See Gillette Co. v. Philips Oral Healthcare, Inc.,* 2001 WL 1442637, *3 (S.D.N.Y.2001)(Freeman, Mag. J.).

A review of Second Circuit Court of Appeals cases leads me to believe that a

showing of good cause is required to grant this order without the specificity required by *Cipollone.* In *Penthouse International, Ltd. v. Playboy Enterprises, Inc.,* 663 F.2d 371, 391 (2d Cir.1981), the Court found that in granting a Rule 26(c) protective order, "the burden is upon the party seeking non-disclosure or a protective order to show good cause." The Court did not require specificity. More recently, in *Dove,* 963 F.2d at 19, the Court cited *Penthouse* with approval and once again did not require specificity. The majority of courts within this district have only used the specificity requirement of *Cipollone* when dealing with protective orders seeking to prevent injury to business. *See, e.g., Wilcock v. Equidev Capital L.L.C.,* 2001 WL 913957 (S.D.N.Y.2001)(Swain, J.); *Sterbens v. Sound Shore Medical Center of Westchester,* 2001 WL 1549228 (S.D.N.Y. 2001)(Fox, Mag.J.). This case, however, does not involve injury to business, and seeks only to protect the interests of private individuals. Therefore, a protective order should be granted so long as the plaintiff can show good cause.

## B.  "Good Cause"

■ Plaintiff asserts that by seeking information on her immigration status, defendants are attempting to exploit the discovery process in an attempt to threaten plaintiff's continued prosecution of her claims. The court need not find such ominous undertones in defendant's discovery requests. Plaintiff's fears of her immigration status deterring further prosecution of her claims are well-founded. Courts have generally recognized the *in terrorem* effect of inquiring into a party's immigration status when irrelevant to any material claim. In particular, courts have noted that allowing parties to inquire about the immigration status of other parties, when not relevant, would present a "danger of intimidation [that] would inhibit plaintiffs in pursuing their rights." *Liu v. Donna Karan International, Inc.,* 207 F.Supp.2d 191, 193 (S.D.N.Y.2002) (citations omitted). Were plaintiff's immigration status relevant to prove a material aspect of the defense, a protective order would not be appropriate. However, when the question of a party's immigration status only goes to a collateral

issue, as in this case, the protective order becomes necessary as "[i]t is entirely likely that any undocumented [litigant] forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face … potential deportation." *Flores v. Albertsons Inc.,* 2002 WL 1163623, *5 (C.D.Cal. 2002). Although the cases addressing this issue typically relate to the Fair Labor Standards Act, the underlying principle is still the same. When the potential for abuse of procedure is high, the Court can and should act within its discretion to limit the discovery process, even if relevancy is determined. The court finds, however, for the reasons listed below that, at best, plaintiff's immigration status is a collateral issue not relevant to any material aspect of the case.

## 1.  Plaintiff's ATCA Claims

■ The ATCA provides, "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Accordingly, the Second Circuit follows a three prong test in determining subject matter jurisdiction under the ATCA. The ATCA "confers federal subject-matter jurisdiction when the following three conditions are satisfied: (1) an alien sues (2) for a tort (3) committed in violation of the law of nations." *Kadic v. Karadzic,* 70 F.3d 232, 238 (2d Cir.1995). Plaintiff contends that the first prong of the test is satisfied by determining the citizenship of the plaintiff. Defendants, however, claim that the first prong of the *Kadic* test can only be satisfied with an inquiry into plaintiff's immigration status. Black's Law Dictionary defines an alien as "[a] foreign born person who has not qualified as a *citizen* of the country." Black's Law Dictionary 71 (6th ed.1990)(emphasis added). Typically, courts deciding subject matter jurisdiction look to the citizenship of the plaintiff, and do not inquire into their immigration status. *See Kadic,* 70 F.3d at 236 (noting that plaintiffs "are Croat and Muslim citizens."); *Amerada Hess Shipping Corp. v. Argentine Republic,* 830 F.2d 421, 425 (2d Cir.1987)(finding subject matter jur-

isdiction because plaintiff corporation deemed Liberian citizen); *Estate of Cabello v. Fernandez–Larios,* 157 F.Supp.2d 1345, 1354 (S.D.Fla.2001) (citation omitted)(finding, "the legal representative of the estate of a decedent shall be deemed a citizen only of the same State as the decedent" to satisfy the first prong under the ATCA.); *Hanoch Tel–Oren v. Libyan Arab Republic,* 517 F.Supp. 542, 548 (D.D.C.1981)(noting, "plaintiffs' complaint suffers defect in that some of the plaintiffs and their personal representatives are citizens of the United States and cannot invoke a claim under § 1350."). Therefore, plaintiff's immigration status is not relevant to her ATCA claims. Furthermore, defendants do not dispute that plaintiff is not an American citizen. See Answer to Second Amended Complaint ¶ 4. While defendants may inquire into plaintiff's citizenship for purposes of subject matter jurisdiction for the ATCA claims, they may not inquire into her immigration status.

### 2. Plaintiff's False Imprisonment and Trafficking Claims

■ Defendants claim that plaintiff's immigration status is relevant to her claims of false imprisonment. In particular, defendants note that her immigration status provides a defense to her false imprisonment claims. A prima facie case of false imprisonment is established "upon a showing that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff did not consent to the confinement; (3) the plaintiff was aware that he was confined; and (4) the confinement was not otherwise privileged." *Curley v. AMR Corp.,* 153 F.3d 5, 13 (2d Cir.1998) (citation omitted). Defendants argue that plaintiff's immigration status is a necessary defense to the second prong of the false imprisonment test. They allege that plaintiff's assertion that she was told "that if she were to go outside by herself, she might be taken into custody by the police" is related to plaintiff's immigration status and thus fails to satisfy the second prong of a false imprisonment claim. Indeed, "[p]laintiff's fears that [she] would be arrested or fired [does] not constitute detaining force necessary to establish the tort of false imprisonment." *Arrington v. Liz Claiborne, Inc.,* 260 A.D.2d 267,

688 N.Y.S.2d 544, 546 (App.Div. 1st Dept. 1999). However, plaintiff also alleges that defendants, among other things, confiscated and maintained her passport. See Second Amended Complaint ¶ 10. Therefore, at best, plaintiff's immigration status would be a collateral matter as a possible cross examination question. It is not, however, relevant to any material aspect of her claim.

■ Defendants also argue that plaintiff's immigration status is a material aspect of her trafficking claim under the ATCA. Plaintiff alleges that the defendants recruited her in India to come to the United States for domestic labor. The defendants deny this allegation, and wish to inquire into the arrangements she made and documents she completed to enter the United States. However, as with the false imprisonment claim, her immigration status is a collateral issue on the trafficking charge, and thus not relevant to a material aspect of the case. Even with regard to relevant matters, courts have broad discretion to limit or bar discovery altogether. *See Crawford–El v. Britton,* 523 U.S. 574, 599, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Plaintiff has shown good cause why a protective order is necessary. Any inquiry into her immigration status, at best, only goes towards collateral issues. The potential danger of deterring a plaintiff from having her day in court by inquiring into a non-relevant matter such as her immigration status is precisely the type of "oppression" Rule 26(c) was designed to prevent.

### IV. CONCLUSION

For the foregoing reasons, Pushpa Topo's motion for a protective order barring defendants from inquiring into her immigration status is **GRANTED**.