Gary CONDIT, Plaintiff,

v.

Dominick DUNNE, Defendant.

No. 02 Civ. 9910(PKL).

United States District Court, S.D. New York.

Dec. 15, 2004.

114

L. Lin Wood, Katherine Ventulett, L. Lin Wood, P.C., Atlanta, GA, Mark E. Goidell, Lazer, Aptheker, Rosella & Yedid, P.C., Melville, NY, for Plaintiff.

Paul V. Licalsi, Devereux Chatillon, Rachel G. Balaban, Sonnenshein Nath & Rosenthal LLP, New York City, for Defendant.

### OPINION AND ORDER

LEISURE, District Judge.

Defendant Dominick Dunne brings this motion for a protective order barring public dissemination of the videotape transcript of defendant Dunne's September 29–30, 2004 deposition pursuant to Federal Rule of Civil Procedure ("FRCP") 26(c). Defendant does not seek to protect the written transcript, but limits his motion to the videotape only. This Opinion and Order accompanies this Court's December 8, 2004 Opinion and Order ("companion Order"), which granted in part and denied in part defendant's motion to compel discovery, and wholly denied plaintiff's cross-motion for protective order. The facts of this case are detailed in the companion Order, familiarity with which is assumed. This Court heard oral argument from both parties on this issue on November 4, 2004.

STATEMENT OF FACTS

The facts with respect to the instant motion are as follows. Defendant claims an order of protection is necessary to bar plaintiff from using the videotape transcript of defendant's deposition to embarrass Dunne, deprive him of a fair trial, and taint the potential jury pool. (Defendant Dominick Dunne's Memorandum of Law in Support of Defendant's Motion for Protective Order ("Def.'s Mem.") at 1.) Defendant states that plaintiff counsel L. Lin Wood, Esq.'s statements to defense counsel, Paul V. LiCalsi, Esq., and to the *New York Post* constitute a threat to improperly disseminate the videotape transcript. (*Id.* at 1–2). On October 4, 2004, the *New York Post* reported Mr. Wood's statements that Dunne was in "deep, deep, trouble" as a result of his deposition testimony and that the "transcript will be interesting, but the video will be even more interesting." (*Id.* at 1–2.) Further, in an email correspondence with defense counsel, Mr. Wood stated that "when the public learns of Mr. Dunne's testimony, whatever reputation he enjoyed will be lost forever in my opinion." (*Id.* at 2.)

Mr. Wood responds that his statement to Mr. LiCalsi and the *New York Post* were taken out of context, in that they were made when Mr. LiCalsi had designated the entire deposition, written and visual, as confidential. Further, Mr. Wood reminds the Court that his statement regarding Dunne's reputation was made in a private email and would not have affected the public perception of Dunne had it not been made public by defendant's instant motion. Mr. Wood avers that Mr. LiCalsi and Dunne have also "tried this case in the press," pointing specifically to defense counsel's statement, appearing in the *New York Post* on September 13, 2004, that plaintiff Condit "murdered his own reputation before Dominick Dunne made any of the statements that are at issue in this lawsuit," and Dunne's references to this lawsuit in his *Vanity Fair* article. (Plaintiff Gary Condit's Memorandum of Law in Opposition to Defendant's Motion for Protective Order ("Pl.'s Opp'n") at 5.) Plaintiff's counsel represents that he has no intention to embarrass Dunne but believes the videotape speaks for itself and will most likely embarrass Dunne on its

own. (Affidavit of L. Lin Wood, Esq. in Support of Pl.'s Opp'n ("Wood Aff.") ¶¶ 5, 8.) Moreover, plaintiff argues defendant's accusations, even if true, do not constitute good cause to seal the video, because, given the public accusations and public figures at issue in this case, the public has a right to hear and see the whole truth. (Pl.'s Opp'n at 10–11.) Finally, plaintiff asserts that defendant and Mr. LiCalsi should not be allowed to represent that Dunne's deposition testimony resulted from fatigue, confusion, and Mr. Wood's allegedly bullying questioning style without the public being allowed access to the tape. (*Id.* at 10–11.)

The Court notes that defendant made his previously private claim—that testimony given in his deposition resulted from confusion, exhaustion, and Mr. Wood's bullying questions—public through affidavits submitted to this Court for review on the instant motion and the companion motion. (Supplemental Affidavit of Rachel G. Balaban, Esq. in Support of Defendant Dominick Dunne's Motion to Compel Discovery and for Court Supervision of Plaintiff Gary Condit's Deposition ("Balaban Aff."), Exhibit 2, Affidavit of Dominick Dunne ("Dunne Aff.") at ¶ 6; Affidavit of Paul V. LiCalsi, Esq. in Support of Defendant Dominick Dunne's Motion for Protective Order ("LiCalsi Aff."), Exhibit C, October 1, 2004 Email from Mr. LiCalsi to Mr. Wood ("Ex. C") ("I believe, [Dunne] was exhausted and confused at times [during his deposition]."); *see* November 4, 2004 Oral Argument Transcript ("Oral Argument Tr.") at 47.)

## DISCUSSION

█ Disappointingly, and despite this Court's encouragement, the parties have been unable to resolve this discovery dispute absent Court intervention. As this Court has previously stated:

> The discovery provisions of the Federal Rules of Civil Procedure are "designed to achieve disclosure of all the evidence rele-

vant to the merits of a controversy." Discovery is meant to proceed "at the initiative of the parties, free from the time-consuming and costly process of court intervention." Nevertheless, Fed.R.Civ.P. 26(c) provides for judicial intervention in the discovery process.

*Spring Valley Water Co. v. Cosco Indus.*, No. 91 Civ. 0410, 1992 WL 8230, *3, 1992 U.S. Dist. LEXIS 223, *7 (S.D.N.Y.1992) (Leisure, J.) (citing *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir.1991)) (quoting *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir.1989)); *see, e.g., Loussier v. Universal Music Group*, 214 F.R.D. 174, 175 (S.D.N.Y.2003) ("[T]he Court notes that the course of discovery thus far has been quite contentious between the attorneys, and the Court has been inundated with letters from both sides on discovery matters which, in a more perfect world, would have been worked out between the parties without the Court's intervention.").[1] So too, have the parties here inundated the Court with letters regarding discovery matters that seem to the Court to be best resolved by the parties. However, when litigation reaches such an impasse as it has here, the Court must exercise its discretion under the Rules to aid in efficient and expeditious discovery.

█ FRCP Rule 26(c) governs defendant's motion and provides that a court may issue a protective order when, for good cause shown, the order is required by justice to protect the party from annoyance, embarrassment, or oppression. Fed.R.Civ.P. 26(c). The order may be limited to requiring that "the discovery may be had only by a method of discovery other than that selected by the party seeking discovery." Fed.R.Civ.P. 26(c)(3). Under this Rule, the burden is on movant to show good cause for barring public dissemination of discovery materials. *Loussier*, 214 F.R.D. at 176–77.

---

1. *Peart v. City of New York*, 992 F.2d 458, 463 (2d Cir.1993) ("This practice of 'litigation by letter,' although common, is an insufficient means of seeking relief from a court.") (citing *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687, 692 n. 6 (Bankr.S.D.N.Y.1992) ("Litigation by Let-

ter," although a pervasive practice in the Southern District, "has been repeatedly criticized and condemned by the ... judges in this district" because it "contributes to the confusion and overload of an already burdened system....")).

The Second Circuit will not disturb the district court's decision either granting or denying an order of protection unless the district court clearly abused its discretion. *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir.1992) ("The grant and nature of protection is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion.") (citing *Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir.1973); *Penthouse Int'l, Ltd. v. Playboy Enter.*, 663 F.2d 371, 391 (2d Cir.1981)); *see Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) ("Rule 26(c) confers broad discretion on the trial court" because "[t]he trial court is in the best position to weigh fairly the competing needs and interests on parties affected by discovery.").

At first blush, the requirement that movant show "good cause" under Rule 26(c) appears clear. However, as evidenced by this Court's review of the relevant case law and the parties' contradictory moving papers, whether a movant has demonstrated good cause is an "unusually fact-sensitive" inquiry. Michael Hoenig, *Protective Confidentiality Orders*, N.Y. L.J., Mar. 5, 1990, at 6. Perhaps due to the broad discretion afforded the trial court, as cited above, and the affect of a highly fact-contingent decisionmaking process, the Court finds it challenging to harmonize the case law in this area. This District has held that movant's burden requires him to cite "specific examples or articulated reasoning" in support of his order of protection. *Loussier*, 214 F.R.D. at 177 (Ellis, Mag. J.) (citing *Akron Beacon Journal v. Metro. Life Ins. Co.*, No. 94 Civ. 1402, 1995 WL 234710, *10, 1995 U.S. Dist. LEXIS 5183, *10 (S.D.N.Y. Apr. 20, 1995). However, this District has also held that specific examples *are not* necessary and movant need only allege "sufficient good cause." *Topo v. Dhir*, 210 F.R.D. 76, 77–78 (S.D.N.Y.2002) (Ellis, Mag. J.) (Only a "showing of good cause is required to grant this order without the specificity required by *Cipollone[v. Liggett Group Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986)), *vacated on other grounds*, 167 F.Supp.2d 606 (S.D.N.Y.2001)].") (citing *Dove*, 963 F.2d at 19; *Penthouse Int'l*, 663 F.2d at 391; *Gillette Co. v. Philips Oral Healthcare, Inc.*, No. 99 Civ. 0807, 2001 WL 1442637, *1, 2001 U.S. Dist. LEXIS 18624, *3 (S.D.N.Y. Nov. 15, 2001)). Magistrate Judge Ellis' offered explanation in *Topo* for this discrepancy was that specificity is required of movants alleging that public dissemination threatens movants with economic injury. However, both *Topo* and *Loussier* involved proposed non-economic uses of discovery related materials, yet held movant to differing standards. *Compare Topo*, 210 F.R.D. at 78 ("The majority of courts within this district have only used the specificity requirement of *Cipollone* when dealing with protective orders seeking to prevent injury to business.") *with Loussier*, 214 F.R.D. at 177 (finding that plaintiff had "no intention to make commercial gain from the use of the depositions," but requiring movant to meet a specificity standard).

Though the case law is muddled, the Court is persuaded that defendant fails to allege sufficiently good cause for sealing the videotape transcript of his deposition testimony, with specificity or otherwise. The Court finds no case law that would support sealing the video under the facts of this case; therefore, the Court finds that movant has failed to satisfy either standard.

## A. Dunne Has Not Sufficiently Alleged Potential Embarrassment or Jury Tainting as Good Cause for Sealing the Video Tape

Dunne alleges that Mr. Wood's statements to the press and to Mr. LiCalsi constitute a threat that Mr. Wood will use the Court's processes to further "private spite or public scandal." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 603, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *see* Defendant Dominick Dunne's Reply Memorandum in Support of Defendant's Motion for Protective Order ("Def.'s Reply") at 2–3. Defendant argues that, because "the potential for abuse of procedure is high, the Court can and should act within its discretion to limit the discovery process." *Topo*, 210 F.R.D. at 78; Def.'s Reply at 3. However, after a review of the case law in this Circuit, the Court finds that the threat alleged here does not rise to

the level of good cause sufficient to justify barring public dissemination of the videotape.

In *Topo*, plaintiff non-citizen accused defendants of, *inter alia*, human trafficking, involuntary servitude, and false imprisonment. 210 F.R.D. at 77. Facing these very serious claims, defendants sought to discover plaintiff's immigration status. The Court, while refusing to find malicious reasons underlying defendants' discovery request, did find that, because plaintiff's immigration status was collateral to the litigation, defendants' interest in liberal discovery did not outweigh the "danger of intimidation [that] would inhibit [non-citizen] plaintiffs in pursuing their rights." *Id.* at 78 (citing *Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F.Supp.2d 191, 193 (S.D.N.Y.2002)). Thus, in *Topo*, Judge Ellis found good cause for limiting discovery where the danger was that plaintiff would be effectively barred from bringing her claim if defendants were allowed to discover her immigration status.

In *Flaherty v. Seroussi*, 209 F.R.D. 295 (N.D.N.Y.2001), the court found movant failed sufficiently to allege good cause and deemed a protective order inappropriate for defendant Mayor's videotaped deposition where the underlying litigation alleged improper official action. There, plaintiff's counsel, in opposing the protective order, directly stated that he "relishes the opportunity to question [the Mayor and is] going to concentrate [his] efforts on knocking Mayor Seroussi's teeth down his throat." *Id.* at 298 (internal quotations and citation omitted). Further, in *Flaherty*, plaintiff's lawyer was adamant about his "intention to publicize the Mayor's deposition, championing 'the rights of the citizens.'" *Id.* Despite this guarantee of imminent public dissemination, the court refused to apply a protective order because the facts supported a strong public interest in free access to discovery documents where the litigation involved "elected officials and the performance of their governmental responsibilities." *Id.* at 299–300.

Finally, in *Paisley Park Enterprises v. Uptown Productions*, 54 F.Supp.2d 347 (S.D.N.Y.1999), the Court found that plaintiffs' allegations of potential embarrassment did constitute good cause because defendants had a history of disseminating documents filed in the litigation. Plaintiffs, including the recording artist commonly known as Prince, pointed to defendants' website which had posted the pleadings, notice of Prince's upcoming deposition, and press releases regarding the case. *Id.* at 348. In this copyright and trademark infringement case based on defendants' website, the Court found that defendants' request sought, in part, "to generate notoriety for themselves and their business ventures." *Id.* Therefore, the Court held that defendants were not permitted to videotape Prince's deposition testimony because "courts should avoid becoming the instrumentalities of commercial or other private pursuits." *Id.* at 349 n. 3 (citing *United States v. McDougal*, 103 F.3d 651, 658 (8th Cir.1996)).

■ The cases above are clearly distinguishable from the case at hand. While defendant is correct that Mr. Wood's statements support an inferential conclusion that he will disseminate Dunne's videotaped deposition, the threat is surely not as prevalent as that in *Flaherty* where the court found good cause did not exist. (*See* Def.'s Mem. at 1–2.) Mr. Wood's statements to the media seem to be on par with Mr. LiCalsi's statements. (*See* Pl.'s Opp'n at 3–6.) As such, considering that both are officers of the Court and absent other evidence, the Court will assume that neither Mr. Wood nor Mr. LiCalsi has malicious or improper intentions regarding any of the discovery materials in this case. *See Topo*, 210 F.R.D. at 78. Further, the Court is unwilling to infer that simply because Mr. Wood opposed the instant motion that he will engage in smear tactics against Dunne through the media. (*See* Def.'s Reply at 2.) Nor is this a case where it is obvious Mr. Wood seeks to further his notoriety. (*See id.* at 6.) While Mr. Wood does mention this case on his website, that listing does not rise to the level of commercial advancement, cited in *Paisley Park* where many of the case filings were posted on the defendants website and the website was central to the litigation. 54 F.Supp.2d at 347–48; *http://www.linwood-law.com/significantverdicts.htm* (last visited Dec. 14, 2004).

Defendant's attempt to shelter the instant facts under the umbrella of *Topo's* reasoning is of no avail. In *Topo,* movant's case would have effectively been dismissed but for the protective order. The embarrassment cited here is only that Dunne's videotaped deposition might be misrepresented by the media through the use of sound bites. While sound bites are a recognized Achilles heel of videotaped depositions, see *Felling v. Knight,* IP 01–0571–C–T/K, 2001 WL 1782360, at *3 (S.D.Ind. Dec. 21, 2001); Henke & Margolis, *The Taking and Use of Video Depositions: An Update,* 17 Rev. Litig. 1, 21–22 (Winter 1998), the fact that the media may edit a tape that may or may not be released by the parties does not warrant a protective order barring all public dissemination of the videotape in this case. Further, the Court is not persuaded that "out of context snippets from Dunne's deposition videotape [will] be endlessly exhibited and broadcast." (Def.'s Reply at 4.) The Court instead agrees with Mr. Wood's statement at Oral Argument that the media frenzy which once accompanied the issues underlying this litigation has subsided considerably. (Oral Argument Tr. at 48 ("Gary Condit is not Bill Clinton, and Dominick Dunne is not Bill Clinton. The idea that some videotape of Dominick Dunne is going to be aired nightly repeatedly is nonsense.").) While the Court anticipates some initial media interest, it is also mindful of the notoriously short attention span of journalists with regard to the sometimes glacial speed of civil litigation, exacerbated by contentious discovery.

To that end, the Court is not convinced that the jury pool will be tainted if this protective order is not issued. As defendant's motion papers leave much open for speculation, the Court assumes defendant fears that media misrepresentation of his videotaped deposition will taint the jury pool and deprive him of a fair trial. However, it is unclear how the media would create such an erroneous and lasting impression of Dunne. The most relevant case defendant cites is not on point. In *United States v. Poindexter,* 732 F.Supp. 170 (D.D.C.1990), the court refused to allow members of the press physical copies of former President Ronald Reagan's videotaped deposition elev-

en days prior to defendant's criminal trial. *Id.* at 173. There, the court cited the temporal proximity to trial as its main reason for withholding the tape. *Id.* at 172–73 ("[T]he need to avoid maximizing pretrial publicity on a vast scale to the detriment of defendant's right to a fair trial clearly outweighs any right the news organizations might have to physical possession of copies of the videotape."). Clearly, this is not an issue in the present matter. Further, the *Poindexter* court factored in their constitutional obligation to "keep intrusions on the presidency to a minimum," and that the court would allow the press to attend viewings of the tape prior to trial. *Id.* Conversely, defendant here wishes to withhold all public dissemination of his deposition well before the beginning of trial.

Because *Poindexter* seems inapplicable to the instant motion, the Court defers to the Second Circuit's cogent view that publicity is unlikely to color incurably jurors' views, even in the most high-profile cases. *See In re NBC, Inc.,* 635 F.2d 945, 948 (2d Cir.1980) (noting that only eight or ten jurors had more than a general recollection of Abscam); *Grogan v. Osborne,* No. 87 Civ. 7024, 1988 WL 49192, *2–3, 1988 U.S. Dist. LEXIS 4011, *5–6 (S.D.N.Y. May 5, 1988) (citing high-profile cases where the jury panel was negligibly affected by the publicity). Even assuming part or all of the video is disseminated to the public, memories fade and, moreover, as the Court noted during Oral Argument, any tainting of the jury pool can be remedied through voir dire. Oral Argument Tr. at 48–49; *see In re NBC, Inc.,* 635 F.2d at 948 (demonstrating that potential tainting of the jury is easily cured in voir dire).

## B. The Countervailing Interest of Public Access in this Case Furthers the Court's Finding of Failure to Allege Sufficient Good Cause

It is undisputed that, as of now, Dunne's videotaped deposition is not a judicial record giving rise to the common law presumption of a public right to free access. *See United States v. Amodeo,* 71 F.3d 1044 (2d Cir.1995) ("*Amodeo II*"); *United States v. Amodeo,* 44

F.3d 141 (2d Cir.1995) ("*Amodeo I*"). In the *Amodeo* decisions, the Second Circuit explored the boundaries of the presumption of the public's right to access discovery materials. "The weight to be given the presumption of access depends on 'the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Marisol v. Giuliani*, No. 95 Civ. 10533, 1997 WL 630183, *3, 1997 U.S. Dist. LEXIS 15705, *6–10 (S.D.N.Y. Oct. 10, 1997) (quoting *Amodeo II*, 71 F.3d at 1049). The material in question "must be relevant to the performance of the judicial function and useful in the judicial process" for the presumption of public access to attach. *Amodeo I*, 44 F.3d at 146. Dunne's videotape has not been filed with the Court and is currently, at best, "tangential to the Article III functions of the Court" as its content does not yet affect any judicial decision-making, save being the subject of the instant motion. *In re NASDAQ Market–Makers Antitrust Litig.*, 164 F.R.D. 346, 353 (S.D.N.Y.1996) (Sweet, J.) (referencing *Amodeo II*, 71 F.3d at 1050).

However, as noted by plaintiff, this case is of public concern. Most persuasive to the Court is that Dunne has publicly accused Mr. Wood of bullying him during his deposition. (Dunne Aff. at ¶ 6.) More importantly, Dunne's affidavit casts doubt on the reliability of his deposition testimony in total:

> To the extent any statements made during my deposition testimony tends in any way to contradict what I have set forth in this affidavit, it was because I was fatigued, confused by what counsel for plaintiff Gary Condit was asking me, and feeling bullied by Mr. Condit's counsel and the manner by which he asked his questions.

(*Id.*) In email correspondence between Mr. LiCalsi and Mr. Wood, Mr. LiCalsi also claimed that Dunne's testimony resulted from fatigue and confusion. (LiCalsi Aff., Ex. C.) In this regard, the videotape is of concern to "those monitoring the federal courts" because, coupled with the affidavit assertions, it implicates the reliability of discovery and seemliness of lawyers' deposition tactics. *Amodeo II*, 71 F.3d at 1049. The Court sees no better way to assure that the

reliability of Dunne's deposition testimony is properly represented than to allow public scrutiny. There is also a public and judicial interest in full and free dissemination of information that would shed light on allegations of improper conduct waged against members of the bar. Moreover, there is a judicial interest in ensuring that court processes are not used to unjustly attack officers of the court. By swearing to, and filing his affidavit with the Court, Dunne attempts to slay his opponent's counsel while simultaneously shielding himself with an order of protection. This manipulation of the court system cannot be tolerated as it creates a one-sided advantage on what the Court must maintain as an equal playing field. As such, it seems clear that Justice Brandeis' famous phrase is as applicable now as it was when quoted in *New York Times v. Sullivan*: "[S]unlight is the most powerful of disinfectants." 376 U.S. 254, 305, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (Goldberg, J., concurring).

Also, the Court notes that the substantive issues in this litigation are also of public concern. Dunne made public statements regarding a then-sitting public official. Those statements directly addressed the propriety of Condit's service as a United States Congressman. (Plaintiff Gary Condit's First Amended Complaint at 20) ("And, you know, if it is indeed true that [Condit] is a welcomed guest at the Middle Eastern embassies, I mean what is a guy on the House Intelligence Committee doing at those embassies?"); *see also Condit v. Dunne*, 317 F.Supp.2d 344, App. (S.D.N.Y.2004) (appending the transcript of Dunne's appearance on the *Laura Ingraham Show*). In *Flaherty*, cited above, the court refused to bar public dissemination of a videotaped deposition of a sitting Mayor. Plaintiff, the city's former Deputy Commissioner of Finance, sued the Mayor, the Commissioner of Finance, and the city, alleging she was improperly denied reappointment to her position because of her amorous relationship with a City Councilman critical of city hall's fiscal policies. 209 F.R.D. at 297. The court there cited public concern as a chief reason for refusing to bar dissemination of the tape. *Id.* at 299 ("In cases where issues of strong public interest

favoring the free dissemination of discovery materials are at play, the normal practice of not according discovery materials the same degree of access as those filed in connection with trial gives way to a presumption of open inspection."). The court further justified its position by stating that, "[t]here is, however, a strong, legitimate public interest on the part of the citizenry to have unfettered access to court proceedings, particularly when they involve elected officials and the performance of their governmental responsibilities." *Id.* at 300; *see also Hawley v. Hall,* 131 F.R.D. 578, 585 (D.Nev.1990) ("The public interest in the conduct of public officials, elected and appointed, outweighs the minimal harms tendered by the defendants as good cause in this case."), *superseded on other grounds by statute,* Fed.R.Civ.P. 5(d) (amended 2000).

In this respect, *Flaherty* is distinguishable as the public officials involved were the defendants accused of wrongdoing. Therefore *Flaherty's* reasoning does not serve as a lynchpin in the instant decision. However, that the *Flaherty* plaintiff alleged that then-sitting public officials engaged in wrongdoing does not negate the public concern in this case. Analogously, here, a then-sitting public official was accused of wrongdoing. More than mere celebrity interest is involved in this case. *Contra Paisley Park,* 54 F.Supp.2d at 349 (noting that the public interest in rock star Prince should not outweigh the public interest in fair and impartial justice for all). Instead, the underlying litigation directly addresses a matter of public interest regarding a Congressman's performance of his official duties.

In sum, defendant does not allege sufficient good cause to justify a bar on public dissemination of his videotaped deposition based on an alleged threat of embarrassment or jury tainting. This Court's refusal to issue such an order is further supported by Dunne's public accusation regarding Mr. Wood's conduct during Dunne's deposition and the effect of that conduct on the reliability of Dunne's testimony. Finally, the Court notes the added public interest in this case; the statements at issue address the.propriety of a then-sitting United States Congressman

in the discharge of his duties. Though the Court refuses to bar affirmatively public dissemination of Dunne's deposition tape, as mentioned in the companion Order, the parties remain free to mutually consent to designate any information garnered through discovery as confidential pursuant to their July 12, 2004, Consent Protective Order Governing Confidential Information.

## CONCLUSION

Defendant's motion for a Protective Order barring public dissemination of the videotape transcript of Defendant Dominick Dunne's September 29–30, 2004 deposition pursuant to FRCP 26(c) is hereby DENIED.

**SO ORDERED.**