**Howard K. STERN, Plaintiff,**

v.

**Rita COSBY and Hachette Book Group USA, Inc. d/b/a Grand Central Publishing, and John or Jane Doe, Defendants.**

**No. 07 Civ. 8536(DC).**

United States District Court, S.D. New York.

Dec. 12, 2007.

Supplemental Order Dec. 13, 2007.

---

Powell Goldstein LLP, by: L. Lin Wood, Esq., Nicole Jennings Wade, Esq., John C. Patton, Esq., Luke A. Lantta, Esq., Katherine V. Hernacki, Esq., Atlanta, GA, Gilberti Stinziano Heintz & Smith, P.C., by: William J. Gilberti, Jr., Esq., Lisa DiPoala Haber, Esq., Belina Anderson, Esq., Syracuse, NY, for Plaintiff Howard K. Stern.

Davis Wright Tremaine LLP, by: Elizabeth A. McNamara, Esq., Elisa L. Miller, Esq., New York, NY, for Defendant Rita Cosby.

Akin Gump Strauss Hauer & Feld LLP, by: Douglass B. Maynard, Esq., Deborah

J. Newman, Esq., New York, NY, for Defendant Hachette Book Group USA, Inc.

## MEMORANDUM DECISION

CHIN, District Judge.

On November 6, 2007, I issued a Memorandum Decision granting plaintiff Howard K. Stern's application for expedited discovery on the issue of whether defendant Rita Cosby attempted to interfere with potential witnesses. *See Stern v. Cosby*, 246 F.R.D. 453 (S.D.N.Y.2007). Stern thereafter served a notice of deposition on Cosby for her deposition. Although a copy of the notice has not been submitted to the Court, the notice apparently advised Cosby that the deposition would be both transcribed and videotaped.

By letter to the Court dated November 15, 2007, Cosby requested a protective order prohibiting the public disclosure of the transcript and video of her deposition before they become a "judicial record." By letter to the Court dated November 16, 2007, Stern opposed the application. Although Stern's attorney, L. Lin Wood, Esq., represents that he has no intention of releasing the video or transcript to the media, Stern argues that good cause does not exist to bar the public dissemination of the video or transcript and that the public has a right of access to the courts and judicial documents. Nonetheless, Mr. Wood apparently agreed not to release the video or transcript to the media pending the Court's decision on Cosby's application.[1]

Cosby's deposition began on November 15, 2007, but it has not yet been completed. The transcript is already some 400 pages long.

On December 7, 2007, I conducted a conference to address Cosby's request for a protective order, with Mr. Wood participating by telephone and the other attorneys attending in person. At the conclusion of the conference, I reserved decision.

I have now considered the matter. For the reasons set forth below, Cosby's application is granted and I will enter a protective order prohibiting—for now—public disclosure of the video and transcript of Cosby's deposition.

## DISCUSSION

### A. Applicable Law

#### 1. The Applicable Federal Rules

■ The Federal Rules of Civil Procedure were recently amended, effective December 1, 2007, "to make them more easily understood." Fed.R.Civ.P. 30 advisory committee's note to 2007 Amendments. Rule 30, which governs depositions, was amended and certain of its subparts were re-numbered. Rule 30(b)(3)(A) now provides that "[u]nless the court orders otherwise, testimony may be recorded by audio, audiovisual, or stenographic means."[2] Accordingly, unless the court orders otherwise, a party may videotape a deposition

---

1. In a letter to Cosby's counsel dated November 8, 2007, Mr. Wood wrote: "[M]y email to you was very clear. I stated that while I had no present intention of releasing the videotape to the public, if Defendant Cosby moved for a protective order prohibiting its release, I would voluntarily agree not to release the video until Judge Chin ruled on such motion. I did not make a blanket pledge to not 'otherwise disclose her testimony' until Judge Chin rules on Defendant's motion, if filed. Howev-er, I have no problem agreeing that I will not release the written stenographic transcript of the deposition until Judge Chin rules on Defendant's motion, if filed."

2. Former Rule 30(b)(2) provided that "[u]nless the court orders otherwise, [a deposition] may be recorded by sound, sound-and-visual, or other stenographic means."

as a matter of right, as long as notice is given of the party's intention to do so.

Rule 26(c), which governs protective orders, was also amended. It now reads that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[3] The rule provides that the court may, for example, preclude discovery or limit the scope or manner of discovery or order that a deposition be sealed, to be opened only upon further order of the court. Fed.R.Civ.P. 26(c)(1)(A), (B), (C), (D), (F).

### 2. *The Public's Right of Access to Court Documents*

The courts have long recognized a "common law right of public access to judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir.2006). The Second Circuit has set forth a three-part analysis for determining whether documents relating to a lawsuit must be made available to the public. *Lugosch*, 435 F.3d at 119–20; *United States v. Amodeo*, 71 F.3d 1044, 1048–52 (2d Cir.1995) (*"Amodeo II"*); *see also Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F.Supp.2d 197, 203–04, 2007 WL 3378254, at *6 (S.D.N.Y. 2007).

■ First, the court must determine whether the documents are indeed "judicial documents," to which the public has a presumptive right of access. *Lugosch*, 435 F.3d at 119; *Amodeo II*, 71 F.3d at 1047; *United States v. Amodeo*, 44 F.3d 141, 145–46 (2d Cir.1995) (*"Amodeo I"*). Second, if the documents are judicial documents, the court must determine "the weight of the presumption," *Lugosch*, 435 F.3d at 119, that is, whether the presump-tion is an "especially strong" one that can be overcome only by "extraordinary circumstances" or whether the presumption is a "low" one that "amounts to little more than a prediction of public access absent a countervailing reason" or whether the presumption is somewhere in between. *Amodeo II*, 71 F.3d at 1048, 1050 (internal quotations and citations omitted). Third, "[o]nce the weight of the presumption is determined, a court must balance competing considerations against it." *Id.* at 1050. Countervailing factors include, among others, the danger of impairing judicial efficiency and the privacy interests of those resisting disclosure. *Lugosch*, 435 F.3d at 120; *Amodeo II*, 71 F.3d at 1050.

■ Not every document generated in a lawsuit is a "judicial document." As the Second Circuit explained in *Amodeo I*:

> We think that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access. We think that the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document.

44 F.3d at 145. In *Amodeo II*, the Court elaborated:

> [A]n abundance of statements and documents generated in federal litigation actually have little or no bearing on the exercise of Article III judicial power.... [T]he temptation to leave no stone unturned in the search for evidence material to a judicial proceeding turns up a vast amount of not only irrelevant but also unreliable material.

---

**3.** Former Rule 26(c) provided that a court could "make any order which justice re-quires."

Unlimited access to every item turned up in the course of litigation would be unthinkable....

71 F.3d at 1048. The Court specifically observed that "[d]ocuments that play no role in the performance of Article III functions, *such as those passed between the parties in discovery,* lie entirely beyond the presumption's reach." *Id.* at 1050 (emphasis added); *accord SEC v. TheStreet.com,* 273 F.3d 222, 233 (2d Cir.2001) (holding that transcripts of deposition testimony were not "judicial documents" that carried presumption of public access).

■ There is little case law on the specific issue of whether a transcript or videotape of a deposition should be sealed in the discovery phase of a lawsuit.[4] Stern relies heavily on *Condit v. Dunne,* 225 F.R.D. 113 (S.D.N.Y.2004), a defamation case brought by Gary Condit, the former Congressman, against Dominick Dunne, an author and commentator, who publicly spoke about Condit's possible involvement in the disappearance and murder of a young woman.

Judge Leisure denied Dunne's application for a protective order prohibiting Condit and his attorney—L. Lin Wood, Esq., who also represents Stern in this case—from publicly disseminating the videotape of Dunne's deposition. Judge Leisure applied *Amodeo II* and held that although the videotaped deposition was not a judicial record giving rise to a common law presumption of public access, the case was one of "public concern" involving a "then-sitting United States Congressman in the discharge of his duties." 225 F.R.D. at 118–20. Judge Leisure concluded that because Dunne had publicly accused Mr. Wood of bullying him during the deposi-

tion and questions had been raised as to Dunne's credibility, "public scrutiny" was warranted. *Id.* at 119. Judge Leisure held that Dunne had failed to allege "sufficient good cause to justify a bar on public dissemination of his videotaped deposition." *Id.* at 120. *Compare Paisley Park Enters., Inc. v. Uptown Prods.,* 54 F.Supp.2d 347 (S.D.N.Y.1999) (permitting defendants to videotape deposition of plaintiff, a rock artist, but allowing only one tape to be made, and requiring that it be safeguarded).

#### B. *Application*

■ I apply the Second Circuit's three-part analysis to the instant case.

First, the transcript and videotape of Cosby's deposition are not, at this point, "judicial documents" entitled to a presumption of public access. To the contrary, at the moment they are merely materials generated in discovery. They are not relevant to my "performance" of a "judicial function," *Amodeo I,* 44 F.3d at 145, and they have "little or no bearing" on my exercise of Article III judicial power, *Amodeo II,* 71 F.3d at 1048. Even in *Condit,* Judge Leisure held that the videotape of Dunne's deposition was not a judicial document. It may be that the transcript of Cosby's deposition will be brought to my attention on a motion to compel, when I will be called upon to exercise my judicial authority to resolve the discovery dispute. Even then, however, I would not need to see the videotape, as my usual practice in considering such a dispute is to rely only on the transcripts. If and when the deposition is presented at trial, it may acquire a different status.

---

4. Once a video deposition is shown in open court at trial, however, it becomes a matter of public record and is to be made accessible to the public, except in the "most extraordinary circumstances." *In re CBS, Inc.,* 828 F.2d 958, 959 (2d Cir.1987) (quoting *In re NBC, Inc.,* 635 F.2d 945, 952 (2d Cir.1980)).

Second, the presumption of public access—if any—that attaches to the transcript and videotape is low, at best. No such presumption attaches at all to the videotape, and even if the transcript is filed for purposes of a motion to compel, the presumption that would attach to the transcript would be low. On any such motion, I would not be making any decision on the merits, but I would simply be reviewing excerpts of the transcripts to resolve a discovery dispute.

Third, I conclude that countervailing interests outweigh the public's right to the videotape and transcript, at least at this point. Two countervailing interests are implicated: there is a danger that judicial efficiency would be impaired by the premature release of the videotape and transcript, and Cosby has a strong privacy interest in resisting disclosure.

The allegations being explored at Cosby's deposition have already drawn attention from certain sectors of the media—described by Cosby's counsel as the "exploitive media." Indeed, certain individuals seem to have their own agendas. For example, Lincoln Bain—a participant in one of the taped conversations at issue—has his own website, www.mrcontroversy.com, which asks "Should Rita Cosby be arrested for witness tampering? Vote in our poll and click this link to leave a comment."[5] This website and others as well as cable television shows have relied heavily on video and audio tapes, and release of the video and transcript of Cosby's deposition will only add to what Cosby's counsel correctly describes as a "circus-

like atmosphere." Asking visitors to a website to "vote" on whether Rita Cosby should be arrested for witness tampering adds nothing to civil public discourse.

In addition, notwithstanding Stern's counsel's apparent agreement not to release the video and transcript pending my decision on the instant application, the transcript already has been leaked, as purported excerpts of the deposition transcript have already found their way onto the Internet, at another website, www.artharris.com.[6] The availability of the videotape would only add to the frenzy, for videos can more easily be abused as they "can be cut and spliced and used as 'soundbites' on the evening news or sports shows," *Felling v. Knight*, No. 01–0571, 2001 WL 1782360, *3, 2001 U.S. Dist. LEXIS 22827, at *9 (S.D.Ind. Dec. 21, 2001), or, even worse, on "celebrity gossip" talk shows.

Judicial efficiency has already been impaired. Although the case is barely two months old, this is already the second discovery motion I have had to decide. The parties, counsel, and the Court have had to spend time and resources dealing with issues generated by the media's disproportionate attention to this case. I am concerned that release of the video and transcript would create additional impediments to the fair and efficient administration of justice, without serving any legitimate purpose. Videotaped depositions are permitted to facilitate the presentation of evidence to juries; they are not intended to provide "a vehicle for generating content

---

**5.** *See* http://www.mrcontroversy.com/ (last visited Dec. 12, 2007).

**6.** *See* http://www.arth arris.com/2007/12/03/bald-truth-exclusive-gay-sex-tape-sources --rita--cosby--swears--its--don-clark--and--wilma--pi/# more--620 (last visited Dec. 12, 2007). In fact, this website has a

PDF file of what purports to be seventeen pages from a "rough draft" of the deposition transcript. *See* http://www.artharris.com/blog/wp--content/uploads/2007/12/bt--scoop--11--30--07--rita -depo-stern-vs-oquin.pdf (last visited Dec. 12, 2007).

for broadcast and other media." *Paisley Park,* 54 F.Supp.2d at 349.

I am also concerned that Cosby will be subjected to further "annoyance, embarrassment, oppression, or undue burden or expense," Fed.R.Civ.P. 26(c), if the video and transcript are released. Although Cosby has made some relatively innocuous public statements recently, she has not publicly challenged the conduct of opposing counsel in taking the deposition, as Dunne did in the *Condit* case. She has not made any statements or taken any actions that would warrant release of the video or transcript for public scrutiny.

In short, the public's right of access to the video and transcript is minimal, and Cosby has shown good cause for the issuance of a protective order.

### CONCLUSION

Cosby's application for a protective order is granted; the parties and their attorneys and other agents are hereby prohibited from releasing the video or transcript of Cosby's deposition or any excerpts or portions or copies thereof to the public absent further order of the Court. Cosby's counsel shall submit a proposed order on notice forthwith.

SO ORDERED.

### MEMORANDUM & ORDER

In my memorandum decision issued in this case yesterday, I wrote the following:

> [N]otwithstanding Stern's counsel's apparent agreement not to release the video and transcript pending my decision on the instant application, the transcript already has been leaked, as purported excerpts of the deposition transcript have already found their way onto the Internet, at another website, www. artharris.com.

The website in question is entitled "Art Harris—The Bald Truth." Seventeen pages of a "rough draft" of the transcript of Cosby's deposition have been posted on the website.

Within minutes of the release of my decision, my law clerk received an e-mail from Stern's counsel, Mr. Wood, stating the following:

> Would you let Judge Chin know that the rough draft pages from Ms. Cosby's deposition that are referenced in his order were not leaked
>
> —they were filed of record in federal court in Texas in connection with a deposition of a witness to show that she had provided Ms. Cosby with information. The pages that were filed related directly to that witness only....
>
> The Order seems to suggest that I leaked the pages so I wanted to bring this information to the Court's attention immediately.

At my direction, my law clerk sent a reply e-mail to all counsel asking several questions, including: "How did Art Harris obtain copies?"

Mr. Wood responded as follows:

> After the hearing was held on November 30 [in Texas on the emergency discovery motion], at the request of Mr. Harris for a copy of Mr. Stern's responsive pleadings to the emergency motion, I authorized my administrative assistant to provide him with a copy of the Response. She did so by email at 5:19 p.m. EST on November 30. At the time I agreed to send the Response to Mr. Harris, the Response had been filed of record and the hearing completed. Having been informed by Ms. McNamara that the pleadings were publicly available on Pacer, I viewed my agreement to send the Response to Mr. Harris as a courtesy—certainly not "leaking" information to him. I know Mr.

Harris from his days in Atlanta when he covered the Olympic Park Bombing for CNN as it related to my client, the late Richard Jewell.

Mr. Wood attached to his e-mail a copy of the "Response." Including exhibits, this is a 245–page document. Exhibit B consists of the seventeen pages of excerpts from Cosby's deposition transcript.

In view of all the circumstances, and in light of the representations made to the Court, I am troubled by Mr. Wood's providing of the deposition excerpts to Harris-even assuming the excerpts were a matter of public record. Mr. Wood's assertion that he did not "leak" the documents to Harris is debatable, and at a minimum he is parsing his words too finely. Even if he did not "leak" the documents, he released them to Harris. Even if the documents were a matter of public record, they were part of a 245–page document filed in Texas in connection with an emergency discovery motion, for a lawsuit in Florida to which Cosby is not a party, and it is highly unlikely that Harris would have known of their existence or availability absent some communication with Mr. Wood or his office. Clearly, Mr. Wood or someone in his office brought them to Harris's attention.

Moreover, Mr. Wood provided the documents to Harris on November 30th, after the parties had written letter briefs addressing Cosby's request for a protective order, and after Mr. Wood had written in his November 8th letter to counsel that "I have no problem agreeing that I will not release the written stenographic transcript of the deposition until Judge Chin rules on Defendant's motion, if filed." Although Cosby had not filed a formal motion, her counsel's letter dated November 15, 2007 clearly constituted a request for a protective order.

In addition, in his letter to the Court dated November 16th, Mr. Wood complained that Cosby's counsel "seems to suggest that I somehow indicated that I intended to release the video or transcript of the deposition to the media. I did not so state or otherwise indicate any intent to do so. To the contrary, I made it clear to Ms. McNamara that I had no intent to do so. . . ." In the same letter, Mr. Wood indignantly complained that Cosby's counsel states to this Court that "the release of Ms. Cosby's deposition (particularly the video) will contribute to, and exacerbate, a circus-like atmosphere in this case consistent with other cases Mr. Wood has brought." This comment by Ms. McNamara suggests that I have been responsible for creating a "circus-like" atmosphere in litigation I have filed for clients in the past. Ms. McNamara cites no authority or examples to support this unnecessary *ad hominem* attack on her opposing counsel because her accusation is false and unsupportable. . . . I am professionally offended that Ms. McNamara would use her letter requesting a discovery conference to falsely suggest to you in writing that I might seek to create a "circus-like atmosphere" in this litigation for Mr. Stern. Such statements by counsel have no proper place in this or any other action.

Despite this chest-beating, and notwithstanding his representation that he had "no intent" to "release" the video or transcript to the media, Mr. Wood released the seventeen pages to Harris on November 30th. Even though the papers were a matter of public record, Mr. Wood surely knew—or should have known—that there was a likelihood the excerpts would be posted on "The Bald Truth" website and that he would thereby be adding fuel to the media coverage of this case.

Finally, I conducted a conference on December 7th. Mr. Wood vigorously opposed the application for a protective or-

der, even quoting from Justice Brandeis: "'[S]unlight is the most powerful of all disinfectants.'" *New York Times v. Sullivan*, 376 U.S. 254, 305, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (Goldberg, J., concurring (quoting Freund, The Supreme Court of the United States 61 (1949))). Mr. Wood again reiterated that he had no intent of releasing the deposition. He did not tell me, however, that he had already provided excerpts of the transcript to the operator of The Bald Truth website.

Under all the circumstances, my decision to issue a protective order stands. Indeed, Mr. Wood's actions provide further support for the issuance of the requested protective order.

It is hereby ORDERED that the parties may not disclose or release any further excerpts from the deposition transcript or video—whether by attaching them to court papers or filing them in any court or otherwise—without the written permission of this Court.

SO ORDERED.