OPINION OF THE COURT
Kenneth A. Davis, J.
Defendant has made an application for a protective order with regard to all items that were exchanged during discovery as well as all transcripts of depositions pursuant to CPLR 3101 (b). Defendant has made a further application for sanctions pursuant to 22 NYCRR 130-1.1 against plaintiffs counsel for their actions with regard to the notification of the media as to the deposition of Dominic Gio and the dissemination of the deposition videotape to the media.
The instant action seeks monetary damages for an alleged wrongful discharge of plaintiff by the defendant hospital. Plaintiff is represented in this action by Mr. Joseph Gagliano, Jr., Mr. Andrew Karamouzis, Ms. Siobhan Moran and Mr. Thomas Seaman. Defendant is represented by Ms. Barbara Hoey of Kelley, Drye and Warren. This action has been extremely contentious throughout the discovery phase. In the interest of judicial economy and to expedite the discovery process, this court with the consent of the parties appointed David Gabor, Esq., a special referee for discovery. Since the appointment of Mr. Gabor, the parties have been diligently conducting discovery and have held all of the examinations before trial without much contention.
The subject of the instant application evolved following the completion of the examination before trial of Dominic Gio, the president and chief executive officer of defendant. Plaintiff noticed the defendant for this examination in or about February 18, 2005. The examination was ultimately rescheduled for March 15, 2005 at Mr. Gabor’s office, after several alleged conflicts with other dates.
An issue arose with regard to videotaping the examination before trial with plaintiffs counsel requesting that the deposition be recorded pursuant to 22 NYCRR 202.15. The parties exchanged correspondence with the Special Referee with regard to this issue. Defense counsel, in a letter dated March 4, 2005, stated that there was no basis to permit the videotaping of the Gio examination before trial. Defendant claimed that the videotaping would be used to embarrass and/or harass Gio. Furthermore, defendant pointed to the fact that the deponent will be readily available for trial as he works and resides in the *630 jurisdiction of this court. Defendant, in this letter, addressed the fact that no other depositions were videotaped and the taping of the deposition would be prejudicial to the defendant. Plaintiff responded by letter to the Special Referee dated March 7, 2005. Plaintiff claimed that it was necessary to record the examination because the plaintiff, Ms. Carol Seaman and her brother, Mr. Thomas Seaman, co-counsel in this action, would probably be unable to attend. Furthermore, plaintiff asserts that since “Gio is the President and CEO of defendant Wyckoff Heights Medical Center, and arguably the most ‘high profile’ party in this action . . . that plaintiff is justified in seeking to videotape” the deposition. Following the exchange of the letters, the Special Referee permitted the deposition to be videotaped with certain restrictions, including the requirement that the portion of the deposition that dealt with personal issues of Gio would not be videotaped.
The videotaped examination was held on March 15, 2005 at the office of Mr. Gabor with Mr. Gagliano, Ms. Moran, Ms. Seaman, Ms. Hoey, Mr. Gio, Mr. Gabor and Mr. Hoffman, the general counsel of the defendant, present. The examination commenced at approximately 10:15 a.m. and concluded at about 3:15 p.m. There were several breaks in the examination. Following the completion of the examination, Mr. Gabor informed the attorneys that he wanted to discuss the remaining issues relating to discovery. Mr. Gagliano, plaintiffs counsel, stated that he had an emergency with a client and had to leave. He allegedly made a phone call at this time. Furthermore, Ms. Moran, plaintiffs co-counsel, stated that she could not discuss the terms of the stipulation that would be the subject of Mr. Gabor’s conference at that time and left the building. Shortly thereafter, Mr. Gio and Mr. Hoffman, defendant’s general counsel, left the building, whereupon they were confronted by a reporter and crew from the television show, “A Current Affair,” who attempted to interview them. Gio and Hoffman proceeded to get into their car and left the area.
Once defense counsel and the Special Referee received notice of this incident, this court was notified and a conference was scheduled for the following morning, March 16, 2005. At said conference, defense counsel informed the court of what had transpired following the completion of the Gio deposition. She stated that the videographer employed by plaintiff had been requested to and did bring special equipment to make an immediate copy of the deposition for plaintiffs use in addition to the *631 master copy. Mr. Gagliano stated that he notified “A Current Affair” at the request of his client. Mr. Gagliano stated that the reason he contacted the television show was privileged and that he could not disclose it. He further stated that he did not contact the program for the benefit of his client or to influence this case. When asked by the court where the copy of the videotape was, Mr. Gagliano informed the court that he had turned the only copy of the tape over to “A Current Affair” immediately after the deposition. The court directed that plaintiffs counsel attempt to recover the tape. In order to give plaintiffs counsel time to address the issues the court adjourned the matter until March 17, 2005.
On March 17, 2005, Mr. Gagliano informed the court that he was unable to retrieve the tape. He further stated that he represented a producer of “A Current Affair” as well as Ms. Seaman. Mr. Gagliano stated that the above actions were taken due to the fact that his client was “goaded” by defense counsel into going public and that his client felt compelled to bring the alleged wrongful conduct to the public. Defense counsel reiterated her position that the actions of plaintiff were taken to harass the defendants and to influence the proceedings. Plaintiffs co-counsel, Andrew Karamouzis, stated that the intent of the plaintiff to videotape was legitimate. The court, after hearing the arguments, issued an immediate protective order with regard to all discovery in this matter.
Defendant’s Application for a Protective Order
Although the United States Constitution provides for freedom of the press, that freedom does not extend to “all stages of a civil litigation.” (Matter of Westchester Rockland Newspapers v Marbach, 66 AD2d 335, 337 [2d Dept 1979], citing Danziger v Hearst Corp., 304 NY 244 [1952].) The right to attend the preliminary stages of a civil matter may be limited if the press will influence the proceedings or will threaten the integrity of the legal system. (Craig v Harney, 331 US 367 [1947]; Westchester Rockland Newspapers, supra.) The courts may fashion a protective order to “regulate the use of disclosure devices and prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.” (Westchester Rockland Newspapers, supra at 337 [internal quotation marks omitted], quoting CPLR 3103 [a].) The protective order may bar the dissemination of information to anyone other than counsel working on the case. (Liebman & Charme v Lanzoni, 164 Misc 2d 302 [Civ Ct, NY County 1995].)
*632 Examinations before trial are not sittings of courts which are required to be open to the public. (Scollo v Good Samaritan Hosp., 175 AD2d 278 [2d Dept 1991].) A deposition is a private matter between the parties designed to assist them in their search for the relevant issues at the upcoming trial. (Id.; Westchester Rockland Newspapers, supra; Bal v Hughes, 1995 WL 244757, 1995 US Dist LEXIS 5466 [SD NY, Apr. 26, 1995].) Parties are entitled to ask broad questions at depositions in an effort to ascertain the truth and to flush out the relevant issues that may assist them in the prosecution or defense of their action. The United States Supreme Court in Seattle Times Co. v Rhinehart (467 US 20, 33 [1984]), stated that
“pretrial depositions . . . are not public components of a civil trial. Such proceedings were not open to the public at common law, and, in general, they are conducted in private as a matter of modern practice. Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action.” (Citations omitted.)
The purpose and intent of depositions is to allow parties to investigate and question other parties and potential witnesses as to all issues that relate to the subject matter. Courts are bound to protect parties and witnesses from having irrelevant and personal matters broadcast publicly. It is troubling to this court when a party seeks to utilize the information obtained during disclosure and discovery to gain an unfair advantage or leverage in the prosecution or defense of an action. Our legal system is based upon the premise that the truth is being sought and to that end jurors and the courts are imbued with the power to hear the facts as they are deemed relevant and to issue a decision based solely upon those facts. To permit the dissemination of discovery to the public prior to the commencement of a trial violates the doctrine of fairness. The court acknowledges that the media plays a vital role in informing the public. However, that role must be limited during the pretrial stage of discovery. Code of Professional Responsibility DR 7-107 (22 NYCRR 1200.38) provides the boundaries for attorneys with regard to trial publicity. The court is well aware that certain cases are of interest to the general public and to the media, however certain limitations have been enacted to protect the integrity of the legal system. “Press coverage of the examinations before trial may well hinder the fair conduct of this litigation. Nor is the court unmindful of the public’s ‘right to know.’ *633 However, that right is not being subverted, but is merely being delayed until the trial begins.” (Scollo, supra at 280.)
In the instant matter, the parties did not request that the media be present at the deposition of Dominic Gio. Exercising their right under 22 NYCRR 202.15 (“Videotape recording of civil depositions”) to videotape the deposition, plaintiffs counsel arranged for an immediate copy to be produced of the deposition. Following the deposition, Mr. Gagliano delivered to the media the only available copy of the deposition. This action essentially placed the media in the private deposition room. 22 NYCRR 202.15 was not promulgated to provide the media with access to depositions but was enacted to allow parties to memorialize the deposition to be used at trial. Traditionally, depositions are videotaped when a deponent will not be available for the trial due to death, illness or being out of the jurisdiction of the court. By allowing the media access to the videotape of the deposition of Gio, the plaintiff has violated the intent and purpose of pretrial discovery. This court in a prior ruling dated January 26, 2005 denied defendants motion for a protective order with regard to the deposition of Gio. That motion was based upon the grounds that plaintiff had intended to inquire into the personal life of Gio. The court gave the authority to Mr. Gabor to rule on the relevance of the question at the time of the deposition. Furthermore, the court found “no basis to keep these papers and all depositions confidential and sealed.” Plaintiff, however, never informed this court that the deposition was to be distributed to the media, nor did defendant or this court anticipate that such an action would be taken. Had plaintiff been candid with the court, a protective order would have been issued forthwith.
It is hereby ordered that all discovery and depositions held in this matter are to be kept confidential. The above items shall not be disseminated to the press or any other persons with the exception of the attorneys of record and the court.
Defendant’s Application for Sanctions
Defendant has additionally made application for sanctions to be assessed against plaintiffs counsel. 22 NYCRR subpart 130-1 provides for sanctions when it is found that a party or attorney has engaged in frivolous conduct. Conduct is defined as frivolous if “it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another.” (22 NYCRR 130-1.1 [c].) In determining whether the *634 conduct is frivolous, the court looked at several factors, including the circumstances under which the conduct took place. Sanctions may be in the form of attorney’s fees and costs and/or a payment to the Lawyers’ Fund for Client Protection.
Plaintiffs counsel, Mr. Gagliano, admitted to this court that he contacted the media at the request of the plaintiff. Initially, Mr. Gagliano refused to inform this court as to the reason he notified the media, claiming that it was privileged. On the second day of the hearing, Mr. Gagliano informed the court that the media was notified due to his client’s need to go public and to protect innocent victims from the dangers of big city hospitals. Mr. Gagliano further stated that the defendant’s counsel provoked plaintiff to go public following her deposition and that the plaintiff read a report about hospital dangers in the newspaper. Defendant’s counsel points out that the plaintiffs deposition, which is the alleged impetus for plaintiff to go public, was completed in October of 2004 and that the news report was issued in September of 2004. The only media outlet with whom plaintiffs counsel was in contact was the one produced by his friend and client. The contact was made almost six months following the plaintiffs deposition and on the eve of the television program “A Current Affair” making its debut.
Code of Professional Responsibility DR 7-102 (a) (1) (22 NYCRR 1200.33 [a] [1]) provides that “a lawyer shall not . . . [flile a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another.”
DR 7-107 (a) (22 NYCRR 1200.38 [a]) provides that
“[a] lawyer participating in or associated with a criminal or civil matter . . . shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in that matter.”
DR 7-107 (b) (22 NYCRR 1200.38 [b]) provides that
“[a] statement ordinarily is likely to prejudice materially an adjudicative proceeding when it refers to a civil matter triable to a jury . . . and the statement relates to: (1) The character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of *635 a witness, or the expected testimony of a party or witness.”
Paragraph (5) of DR 7-107 (b) (22 NYCRR 1200.38 [b] [5]) provides that the lawyer should not make a statement relating to information “the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial.”
DR 7-107 (c) (22 NYCRR 1200.38 [c]) provides that the lawyer may state the following without elaboration:
“(1) The general nature of the claim or defense.
“(2) The information contained in a public record.
“(3) That an investigation of the matter is in progress.
“(4) The scheduling or result of any step in litigation.
“(5) A request for assistance in obtaining evidence and information necessary thereto.
“(6) A warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest.”
Although this court does not have jurisdiction over attorney disciplinary proceedings as correctly pointed out by plaintiffs co-counsel, this court has taken those sections as well as 22 NYCRR subpart 130-1 into consideration in rendering its decision.
The court finds that the actions taken by plaintiffs counsel, Mr. Joseph Gagliano, Jr. and Mr. Andrew Karamouzis were deliberate and calculated to harass and maliciously injure defendants. The court finds that plaintiffs counsel, pursuant to DR 7-107 (c) (4) (22 NYCRR 1200.38 [c] [4]), acted within their rights in notifying the media of the time and location of the deposition. However, the claim that this action was taken to protect the public is disingenuous considering that contact was made over two years since the commencement of the action and six months since the alleged “goading” by defense counsel and the article in the newspaper. In addition, defense counsel indicated that plaintiff had other ways to protect the public, including contacting the New York State Department of Health through a confidential hotline, which she has never done.
Furthermore, the court finds that plaintiffs counsel’s contention that the videotaping was necessary to gauge the credibility of the deponent and to provide a copy to Ms. Seaman is without *636 merit. The court finds that plaintiff intended to provide the media with immediate access to the deposition. No other depositions were videotaped. Plaintiffs counsel, in its letter to the court dated March 7, 2005, stated:
“Plaintiff has an absolute right to take Mr. Gio’s deposition under [22] NYCRR § 202.15. Defendant has produced absolutely no evidence that the plaintiff intends to videotape Mr. Gio’s deposition for any improper motive nor can it. To the contrary, as Ms. Hoey herself points out, Mr. Gio is the President and CEO of defendant Wyckoff Heights Medical Center, and arguably the most ‘high profile’ party in this action. On that basis alone, Plaintiff is justified in seeking to videotape Mr. Gio’s deposition.”
Neither the Special Referee nor the defendants anticipated that the plaintiffs counsel would arrange for immediate duplication of the deposition and furnish it to the media, nor should they have. Moreover, this court would not have permitted it had counsel been forthright with the court. In addition, the counsel’s failure to immediately retain a copy for their own use is further evidence of plaintiffs intent.
In retrospect, the rapid exit of plaintiffs counsel following the deposition and the excuses offered for their conduct evince their actual intent in videotaping the deposition.
At the hearing, plaintiffs counsel, Mr. Gagliano, admitted to soliciting the media coverage as well as turning over the videotape to the media. Plaintiff’s counsel, Mr. Andrew Karamouzis, admitted to arranging for the videotape recording and to have the additional copies produced. Plaintiffs counsel, Ms. Siobhan Moran, claims that she did not know that the television program was contacted nor did she know that the deposition was going to be provided to “A Current Affair.”
22 NYCRR 130-1.1 (b) provides that “[w]here the award or sanction is against an attorney, it may be against the attorney personally or upon a partnership, firm, [or] corporation . . . with which the attorney is associated and that has appeared as attorney of record.” In view of the conduct of Mr. Gagliano, and Mr. Karamouzis on behalf of the law firm of Moran & d’Arcambal, it is hereby ordered that the law firm of Joseph Gagliano, Jr. and the law firm of Moran & d’Arcambal are hereby sanctioned the costs associated with the instant application including but not limited to defendant’s attorney’s fees and the costs of the Special Referee. The amount of attorney’s fees *637 and costs shall be the subject of a hearing to be held on April 7, 2005 at 10:00 a.m. Defendant’s counsel and the Special Referee are hereby ordered to provide to this court and to plaintiff’s counsel affirmations of services and costs by 12:00 noon on April 4, 2005. It is furthered ordered that Mr. Joseph Gagliano, Jr. is sanctioned the sum of $5,000 to be paid to the Lawyers’ Fund for Client Protection. Mr. Andrew Karamouzis is hereby sanctioned the sum of $2,500 to be paid to the Lawyers’ Fund for Client Protection.