WALLACE, Judge.
 

 The Appellants, Christopher Forrest and The Forrest Law Group, challenge a nonfinal, temporary injunction, enjoining them “from posting, publishing, disseminating, or maintaining materials from the video depositions” of the individual Appellees “until further order” of the circuit court and directing them to remove the video depositions from YouTube.
 
 [1]
 
 We reject the Appellants’ argument that the injunction amounts to an unconstitutional prior restraint on their protected First Amendment speech. Instead, we uphold the injunction as an appropriate exercise of the trial court’s discretionary authority to prevent the abuse of the discovery process. However, we agree with the Appellants that the trial court erred in failing to require a bond.
 

 I. THE FACTUAL AND PROCEDURAL BACKGROUND
 

 Christopher Forrest and his law firm represent Peter Y. Morion and Barbara P. Morion, who are defendants in the underlying mortgage foreclosure action filed by Deutsche Bank National Trust Company. The original owner of the Morions’ note and mortgage was Ameriquest Mortgage Company. Deutsche Bank apparently acquired the note and mortgage by assignment from Ameriquest.
 

 The Appellants are Mr. Forrest and his law firm. Although named as Appellees, neither the Morions nor Deutsche Bank have filed a brief in this court. The remaining Appellees are all nonparties to the underlying mortgage foreclosure action.
 
 [2]
 
 Questions raised by the Morions about the execution of the assignment of the note and mortgage from Ameriquest to Deutsche Bank explain the involvement of the Appellees in the litigation. Citi Residential Lending, Inc., executed the assignment in question as attorney-in-fact for Ameriquest. Crystal Moore signed and acknowledged the assignment as the vice president of Citi Residential Lending. Vilma Castro and Dhurata Doko witnessed the assignment. Bryan Bly, a notary public, took the acknowledgment of Ms. Moore’s signature on the instrument. Nationwide Title Clearing, Inc. (NTC), employs all four of the individual Appellees.
 

 Mr. Forrest sought to take the depositions of the NTC employees, purportedly to discover facts pertinent to the Morions’ defense that the assignment was invalid
 
 *272
 
 because it was improperly executed. The Appellees responded by moving for a protective order to prevent the depositions from taking place. Mr. Forrest and the Appellees’ attorney were unable to resolve their dispute about the depositions, and the matter was set for a hearing before the circuit court.
 

 The hearing on the motion for protective order filed by the Appellees might have appeared to be a typical pretrial skirmish in a routine residential foreclosure. But the controversy concerning the role of so-called “robo-signers”
 
 [3]
 
 in the foreclosure crisis currently confronting the court system lent the matter additional significance.
 

 At the hearing on the motion for protective order, counsel for the Appellees argued, in pertinent part, that the mortgage assignment and the depositions of the NTC employees were irrelevant to the disposition of the underlying matter. She claimed that the assignment of the mortgage was not necessary for Deutsche Bank to establish its standing to foreclose because standing was based upon its status as the holder of the note. In addition, counsel observed that the Morions did not challenge the content of the assignment or argue that the mortgage was not properly assigned. Instead, the Morions took issue with the manner in which the assignment was executed.
 

 The Appellees’ counsel pointed out the current robo-signer scandal and argued that the Appellants were “trying to just jump on the bandwagon and make a national issue here.” She expressed concern that “these type of depositions are going to continue going on all over the State, as this is the new, in-vogue tactic to fight foreclosure.” In addition, counsel pointed out that the Appellants were seeking to take the video depositions of the individual Ap-pellees and that while there might be legitimate reasons for taking the depositions by video, “not once in their response do [the Appellants] try to provide a legitimate reason for this request.
 
 And we believe it’s obvious they just want to post this on the Internet.”
 
 (Emphasis added.) Finally, counsel articulated her belief that the depositions would severely prejudice the individual nonparty Appellees. She noted that Mr. Bly’s name had already been spread “all over the Internet” and that while “these employees have nothing to hide, ... they have nothing to do with this case and they shouldn’t be subject to harassment ... on a document that has no relevance.” Thus the Appellees’ counsel expressly voiced her concern that Mr. Forrest intended to post the video depositions of the four individual Appellees on the Internet.
 

 The circuit court asked Mr. Forrest to respond to the Appellees’ arguments. Mr. Forrest replied:
 

 [W]hether or not taking these depositions might be the new, in-vogue defense tactic, this case is not about the national scene, it’s not about the robo signers scandal that’s hit the media, this case is about the Morions. I’m here to defend these folks against a foreclosure action against their home.
 

 Mr. Forrest argued that the Morions had the right to depose the individual Appel-lees “when the facts to be elucidated during that deposition have direct bearing on the arguments that can be presented at summary judgment hearing and/or trial on this case.” He contended that the assign
 
 *273
 
 ment was relevant because Deutsche Bank alleged that it did not have the note and that it had filed a claim to reestablish a lost instrument. Deutsche Bank had also attached the assignment as an exhibit to the complaint. Mr. Forrest also articulated his belief based on other discovery that there were irregularities in the signatures on the assignment.
 

 With regard to the Appellees’ counsel’s suggestion concerning his intent in videotaping the depositions, Mr. Forrest represented:
 

 And to respond briefly to the allegations about some ulterior motives I have for taking them by videotape, I’m quite concerned with the current scandal that’s going on that these people may not be available when it comes time to try and present them at hearing or trial.
 

 There’s a lot of attention being focused on them; a lot of scrutiny. I don’t want to have trial come up and then not be able to find them or locate them because they quit or been fired or they’ve moved.
 

 By videotaping these depositions, I can preserve the evidence to be used later in this case. That’s the only reason I want them videoed. Oh, no, I take that back. That’s reason number one. Reason number two is: I anticipate, based on the response I’ve gotten here and the vigorous attempt to block when I attempt to take these depositions, that I’m going to run into some serious obstacles in taking these depositions, whether they’re objections and attempts to obstruct my ability to take them.
 

 [[Image here]]
 

 ... And I would like to create a video record of that, in case we need to come before the Court and have rulings on whether or not particular questions in the deposition are relevant, and whether or not opposing counsel, you know, is obstructing my ability to move forward.
 

 They’re obviously quite concerned that this — that my little case will have these huge ramifications. I don’t want those concerns to affect my ability to do my job on behalf of my clients.
 

 Thus Mr. Forrest did not expressly say that he did not intend to post the video depositions of the individual Appellees on the Internet. But his denial of “some ulterior motives” and his recitation of the reasons for taking the video depositions were calculated to leave the impression that he harbored no such intent.
 

 At the conclusion of the hearing, the circuit court denied the Appellees’ motion for protective order. Significantly, the court noted the liberality of the rules of discovery and the fact that the depositions could be relevant to the Morions’ defense. Thus the four individual Appellees submitted to the taking of their depositions by Mr. Forrest on November 4, 2010, without the benefit of any court-imposed limitations. Only a few days later, between November 7 and 9, Mr. Forrest posted the video depositions of Crystal Moore, Dhura-ta Doko, and Bryan Bly on YouTube.
 
 [4]
 
 Notably, Mr. Forrest acted before the individual Appellees even had an opportunity to read and sign the deposition transcripts and, if necessary, to make any changes.
 
 See
 
 Fla. R. Civ. P. 1.310(e) (providing for witness review of deposition testimony that is transcribed).
 

 On November 9, Mr. Forrest filed with the clerk a “Notice of Filing Video Depositions.” This paper purported to give notice of the filing of the video depositions of
 
 *274
 
 Crystal Moore, Bryan Bly, Dhurata Doko, and Vilma Castro. The certifícate of service reflects service of a copy of the notice on counsel for Deutsche Bank, but not on the Appellees’ counsel. According to the Appellees, the Appellants did not actually file the depositions with the clerk, only the one-page notice. The Appellants do not dispute this claim.
 

 On November 11, the Appellees served a motion for sanctions and a motion to determine confidentiality of court records. The motion to determine confidentiality asserted that the posting of the depositions on YouTube invaded the individual Appellees’ privacy and subjected them to unnecessary abuse and harassment. The Appellees sought to classify the individual Appellees’ video depositions as confidential under Florida Rule of Judicial Administration 2.420(c)(9)(A)(v) to “avoid substantial injury to innocent third parties.” On the same day, the Morions served their own motion for sanctions and a response to the motion to determine the confidentiality of court records.
 

 On November 17, the circuit court contacted the Appellees’ counsel by e-mail and requested that she set a one-hour hearing on the various motions for Friday, November 19. But when the Appellees’ counsel attempted to contact Mr. Forrest to coordinate the hearing, she was told that he was “out of the country” until Monday, November 22. Because of the Thanksgiving holiday, the circuit court was unavailable for hearings during the week that Mr. Forrest was scheduled to return, and the court’s next available hearing date was December 1, almost two weeks later. The juxtaposition of Mr. Forrest’s sudden unavailability and the trial court’s holiday schedule left the Appellees’ counsel with limited options to address timely the posting of the video depositions on YouTube. Thus she filed the emergency motion for a temporary injunction on November 19.
 

 II. THE TEMPORARY INJUNCTION
 

 The circuit court heard the emergency motion on November 19, the same day that it was filed, without further notice to Mr. Forrest. After an ex parte hearing, the circuit court granted the emergency motion. The order granting the temporary injunction provides, in pertinent part, as follows:
 

 The Court fully supports First Amendment Rights and the public’s access to information. However, in this case, until the issue can be more fully explored in an expedited hearing, the Court finds that the public interest favors the temporary injunction because of the potential for permanent injury to those individuals who were called as witnesses, but who are not named as parties to this law suit.
 

 The Court ORDERS a temporary and mandatory injunction in this lawsuit of the actions of Christopher Forrest and The Forrest Law Firm, including:
 

 1. Christopher Forrest and The Forrest Law Firm, and all persons acting in concert with either, are enjoined from posting, publishing, disseminating, or maintaining materials from the video depositions of the NTC Employees, until further order by this Court;
 

 2. Christopher Forrest and The Forrest Law Firm are to immediately remove the video depositions of Ms. Moore, Mr. Bly, and Ms. Doko from The Forrest Law Firm ‘YouTube” channel, until further order by this Court; and
 

 3. Christopher Forrest is to show cause to this Court why this temporary injunction should not be permanent.
 

 Mr. Forrest and his law firm did not file a motion to dissolve or to modify the temporary injunction under Florida Rule of Civil
 
 *275
 
 Procedure 1.610(d).
 
 [5]
 
 Instead, they filed this appeal.
 

 III.THE APPELLANTS’ ARGUMENTS
 

 On appeal, the Appellants make three arguments. First, they argue that the temporary injunction constitutes an unconstitutional prior restraint on their right to free speech. Second, the Appellants assert that the temporary injunction is overly broad and that the circuit court improperly entered it without notice. Third, they contend that the temporary injunction is defective because it does not require the Appellees to post a bond. The Appellants’ second argument is without merit and does not warrant further discussion. We will address their first and third arguments below.
 

 IV.PRELIMINARY MATTERS
 

 We begin our consideration of the propriety of the entry of the temporary injunction with the applicable appellate standard of review. Our review of orders granting temporary injunctions is for abuse of discretion.
 
 Atomic Tattoos, LLC v. Morgan,
 
 45 So.3d 63, 64 (Fla. 2d DCA),
 
 petition for review dismissed,
 
 50 So.3d 1137 (Fla.2010). We apply a de novo standard of review to the determination of whether a temporary injunction constitutes an unconstitutional prior restraint on free speech.
 
 Post-Newsweek Stations Orlando, Inc. v. Guetzloe,
 
 968 So.2d 608, 609 (Fla. 5th DCA 2007). Here, because the Appellants did not seek to dissolve the ex parte injunction, the scope of our review is limited to the legal sufficiency of the order on appeal, the motion for the injunction, and any supporting documents.
 
 See High Sch. Activities Ass’n v. Marsonek,
 
 805 So.2d 868, 869 (Fla. 2d DCA 2001).
 

 V.DISCUSSION
 

 A. Prior Restraint or Prevention of Abuse of the Discovery Process?
 

 The Appellants view the temporary injunction as “a prior restraint on the publication and dissemination of matters of great public importance.” They argue that the posting of the video depositions on the Internet constitutes speech. And according to the Appellants, the temporary injunction, which requires them to remove the depositions and prohibits them from “posting, publishing, disseminating, or maintaining materials from the video depositions,” amounts to an unconstitutional prior restraint of that speech because it necessarily determines that the First Amendment does not protect that conduct. In support of their position, the Appellants rely on
 
 Near v. Minnesota ex rel. Olson,
 
 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), and similar cases condemning prior restraints on speech as inconsistent with the freedom of speech guaranteed by the First Amendment.
 

 The Appellees frame the issue before us differently. They argue that this case “is about a trial court’s authority to control pretrial discovery procedures and the conduct of attorneys who appear before it.” We agree with the Appellees that the temporary injunction does not amount to an unconstitutional prior restraint of the Appellants’ free speech. Our conclusion on this point is guided by the teaching of the United States Supreme Court in
 
 Seattle Times Co. v. Rhinehart,
 
 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).
 

 
 *276
 
 In
 
 Seattle Times,
 
 the Court addressed “whether parties to civil litigation have a First Amendment right to disseminate, in advance of trial, information gained through the pretrial discovery process.”
 
 Id.
 
 at 22, 104 S.Ct. 2199. In that case, the respondent, Mr. Rhinehart, filed a suit against the petitioners, Seattle Times and others, for defamation and invasion of privacy in connection with the publication of several articles concerning Mr. Rhinehart and his religious group, the Aquarian Foundation.
 
 Id.
 
 at 22-23, 104 S.Ct. 2199.
 

 After suit was filed, the petitioners initiated discovery and sought certain financial information from the respondents, including the identity of the Foundation’s donors and members during the preceding ten years.
 
 Id.
 
 at 24, 104 S.Ct. 2199. The trial court granted the petitioners’ motion to compel discovery of this information, and it granted the respondents’ motion for protective order in connection with that information.
 
 Id.
 
 at 24-27, 104 S.Ct. 2199. “The order prohibited petitioners from publishing, disseminating, or using the information in any way except where necessary to prepare for and try the case.”
 
 Id.
 
 at 27, 104 S.Ct. 2199. The order did not apply to information that the petitioners gained by means other than the discovery process. Ultimately, the Supreme Court of Washington approved both the order compelling the discovery and the protective order limiting its use,
 
 id.
 
 at 27-28, 104 S.Ct. 2199, and the Supreme Court accepted review.
 

 The Supreme Court noted that Washington, like most states, had adopted discovery rules modeled after the Federal Rules of Civil Procedure and that Washington Superior Court Civil Rule 26(b)(1) permitted a party to “obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.”
 
 Id.
 
 at 29, 104 S.Ct. 2199 (quoting Wash.Super. Ct. Civ. R. 26(b)(1)). Further, “discovery is not limited to matters that will be admissible at trial so long as the information sought ‘appears reasonably calculated to lead to the discovery of admissible evidence.’ ”
 
 Id.
 
 at 29-30, 104 S.Ct. 2199 (quoting Wash.Super. Ct. Civ. R. 26(b)(1)).
 
 [6]
 
 It noted that the rule did not distinguish between private or intimate information and information to which no privacy interests attach.
 
 Id.
 
 at 30, 104 S.Ct. 2199. “Thus, the [r]ules often allow extensive intrusion into the affairs of both litigants and third parties,” and “[i]f a litigant fails to comply with a request for discovery,” a court may direct compliance enforceable through its contempt powers.
 
 Id.
 

 The Supreme Court observed that “[t]he critical question that this case presents is whether a litigant’s freedom comprehends the right to disseminate information that he has obtained pursuant to a court order
 
 *277
 
 that both granted him access to that information and placed restraints on the way in which the information might be used.”
 
 Id.
 
 at 32, 104 S.Ct. 2199. In addressing that question, the Court recognized that “it is necessary to consider whether the ‘practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression’ and whether ‘the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved.’ ”
 
 Id.
 
 (alterations in original) (quoting
 
 Procunier v. Martinez,
 
 416 U.S. 396, 413, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)).
 

 The Court found it significant that in the case before it, the petitioners had obtained the information that they wanted to disseminate “only by virtue of the trial court’s discovery processes.”
 
 Id.
 
 And, because the rules authorizing discovery were adopted by the state legislature, that process was a matter of legislative grace. Thus, the court concluded, “[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit.”
 
 Id.
 

 The Court also found it significant that pretrial depositions and interrogatories are not public information and that, generally, such discovery is conducted in private.
 
 Id.
 
 at 33, 104 S.Ct. 2199. Further, much of the information obtained during pretrial discovery may be unrelated or merely tangentially related to the underlying case so that restraints placed upon discovered, but not yet admitted, information do not restrict a traditionally public source of information.
 
 Id.
 

 Finally, the Court observed that an order prohibiting dissemination of information discovered before trial is not the type of “classic prior restraint that requires exacting First Amendment scrutiny.”
 
 Id.
 
 This is because such orders prevent a party from disseminating only that information obtained through the discovery process and do not prevent a party from disseminating the identical information covered by the protective order as long as it is gained through independent means.
 

 The Court found that “Rule 26(c) furthers a substantial governmental interest unrelated to the suppression of expression” and that “[b]ecause of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c).”
 
 Id.
 
 at 34, 104 S.Ct. 2199. The Court reasoned, “[t]here is an opportunity ... for litigants to obtain — incidentally or purposefully— information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes.”
 
 Id.
 
 at 35, 104 S.Ct. 2199. The Court held “that where ... a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment.”
 
 Id.
 
 at 37, 104 S.Ct. 2199.
 

 The rationale of
 
 Seattle Times
 
 applies here. Although this case involves a temporary injunction rather than a protective order, the circumstances are analogous to the situation in
 
 Seattle Times.
 
 The reasoning in that case supports the conclusion that the circuit court’s order does not constitute an unconstitutional prior restraint on the Appellants’ free speech. Significantly, the Appellants used the discovery process and the subpoena power of the court to obtain the video depositions at issue here. And the individual Appellees have demonstrated that the posting of
 
 *278
 
 those depositions on the Internet infringes upon then’ privacy rights and has already subjected them to harassment. We acknowledge that the Appellees sought to block the depositions entirely rather than seeking a protective order against the posting of the depositions on the Internet and other dissemination of the depositions. However, the transcript of the hearing on the motion for protective order leaves little doubt that the circuit court allowed the depositions to go forward without restriction based on representations that gave the conscientious and experienced circuit judge an incomplete account of Mr. Forrest’s intended use of them. In our view, these disquieting circumstances invoke the same substantial interest in preventing the abuse of the circuit court’s processes that the United States Supreme Court recognized in
 
 Seattle Times.
 

 We also note that other courts have imposed restrictions on the release of videotaped depositions for good cause shown.
 
 See Stern v. Cosby,
 
 529 F.Supp.2d 417, 423 (S.D.N.Y.2007) (prohibiting the release of the video or transcript of the defendant’s deposition, including excerpts, portions, or copies thereof, to the public absent further order of the court);
 
 Baker v. Buffenbarger,
 
 No. 03-C-5443, 2004 WL 2124787, at *4 (N.D.Ill. Sept. 22, 2004) (not reported in F.Supp.2d) (limiting the use of the defendants’ videotaped deposition testimony to purposes directly related to settlement and trial preparation in the case and prohibiting the dissemination of the depositions prior to trial);
 
 Paisley Park Enters., Inc. v. Uptown Prods.,
 
 54 F.Supp.2d 347, 349-50 (S.D.N.Y.1999) (imposing restrictions on the copying, storage, and dissemination of the video deposition of Prince, the well-known rock artist);
 
 Seaman v. Wyckoff Heights Med. Ctr., Inc.,
 
 8 Misc.3d 628, 798 N.Y.S.2d 866, 871, 873 (N.Y.Sup.Ct.2005) (prohibiting dissemination of deposition and discovery materials to the press or any other persons except attorneys of record and imposing monetary sanctions on attorneys who delivered the only copy of the videotaped deposition of the president and chief executive officer of the defendant to persons associated with the television program,
 
 A Current
 
 Affair),
 
 affirmed,
 
 25 A.D.3d 598, 806 N.Y.S.2d 888 (N.Y.App.Div.2006),
 
 petition for review dismissed,
 
 7 N.Y.3d 864, 824 N.Y.S.2d 609, 857 N.E.2d 1139 (2006).
 
 [7]
 

 
 *279
 
 Moreover, the video depositions and the testimony contained in them, like the information at issue in
 
 Seattle Times,
 
 are not court records that are open to the public but were obtained as part of the pretrial discovery process. Depositions and other discovery material frequently contain matters that are inadmissible in evidence, irrelevant to the issues in litigation, defamatory, or prejudicial. This fact argues strongly against turning the discovery process into a means to obtain information for publication in the press or other media.
 
 See Palm Beach Newspapers, Inc. v. Burk,
 
 504 So.2d 378, 382-84 (Fla.1987) (discussing the
 
 Seattle Times
 
 case at length). And Mr. Forrest’s filing of a notice of filing depositions without actually filing them does not transform the depositions into court records that are open to the public.
 
 See
 
 Fla. R. Jud. Admin. 2.420(b)(1)(A) (defining court records as “the contents of the court file”).
 

 We conclude that the order under review falls within the limitations recognized in
 
 Seattle Times.
 
 The requirements for the entry of a temporary injunction are more stringent than the showing of “good cause” required for the entry of a protective order. In addition, the order only addresses the nonparty witnesses’ pretrial •video depositions, and it does not purport to restrict the dissemination of the information contained in the video depositions if Appellants obtain that information from other sources. Accordingly, we conclude that the temporary injunction does not amount to an unconstitutional prior restraint on the Appellants’ First Amendment rights. The circuit court acted properly within the broad scope of its discretion in entering the temporary injunction to protect the individual Appellees and to prevent the abuse of the discovery process.
 

 B. The Failure to Require a Bond
 

 However, the circuit court erred in entering the injunction without requiring the Appellees to post a bond. Florida Rule of Civil Procedure 1.610(b) provides that “[n]o temporary injunction shall be entered unless a bond is given by the movant in an amount the court deems proper, conditioned for the payment of costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined.” “An injunction is defective if it does not require the movant to post a bond. ‘The trial court cannot waive this requirement nor can it comply by setting a nominal amount.’ ”
 
 Fla. High Sch. Activities Ass’n v. Mander,
 
 932 So.2d 314, 315—16 (Fla. 2d DCA 2006) (quoting
 
 Bellach v. Huggs of Naples, Inc.,
 
 704 So.2d 679, 680 (Fla. 2d DCA 1997)). However, “[n]o bond shall be required for issuance of a temporary injunction issued
 
 solely
 
 to prevent physical injury or abuse of a natural person.” Fla. R. Civ. P. 1.610(b) (emphasis added).
 

 Here, the order granting the injunction states “that the injunctive relief granted herein does not require a bond” without explaining the basis upon which the court concluded that no bond was required. The order adopts the arguments in the Appel-lees’ motion in determining that they had a clear legal right to the requested relief and a substantial likelihood of success on the merits, that they had suffered and would continue to suffer irreparable harm unless relief was granted, and that they lacked an adequate remedy at law. The emergency motion for temporary injunction does not assert that the Appellees are entitled to the injunction without posting a bond.
 

 On appeal, the Appellees argue that the physical injury or abuse exception to the bond requirement applies in this case, stating that the circuit court issued the injunction solely to prevent the physi
 
 *280
 
 cal injury or abuse of the individual Appel-lees. We disagree. To be sure, persons viewing the video depositions on the Internet reacted with a variety of unflattering remarks and vague threats. However, such negative comments do not constitute the “abuse” contemplated by rule 1.610(b) sufficient to excuse the requirement of posting a bond.
 

 Moreover, the motion for temporary injunction asserts the violation of the Appellees’ privacy rights, including the disclosure of their identities as a basis for imposing the injunction. The order granting the injunction adopted the arguments in the motion in support of its issuance, and thus the injunction was not issued “solely” to prevent physical injury or abuse as required by rule 1.160(b). See
 
 United Farm Workers of Am., AFL-CIO v. Quincy Corp.,
 
 681 So.2d 773, 777 (Fla. 1st DCA 1996) (holding that where the
 
 temporary
 
 injunction prohibited actions broader than those required
 
 “solely
 
 to prevent physical injury,” waiver of the bond requirement was error).
 

 The Appellees also argue that no bond was required because the Appellants were not parties to the underlying action and because the circuit court has the inherent power to protect nonparty witnesses. But the Appellees have not cited any authority for that proposition. Accordingly, we reject this argument.
 

 VI. CONCLUSION
 

 For the foregoing reasons, we affirm the order under review to the extent that it grants the requested temporary injunctive relief. We reverse the order to the extent that it fails to require a bond in accordance with Florida Rule of Civil Procedure 1.610(b). On remand, the circuit court shall promptly set the bond in an appropriate amount after providing the parties to the litigation and the interested nonparties with an opportunity to be heard on this issue.
 
 See Finder v. Finder,
 
 817 So.2d 1104, 1105 (Fla. 2d DCA 2002).
 

 Affirmed in part, reversed in part, and remanded.
 

 KHOUZAM and MORRIS, JJ., Concur.
 

 [1]
 

 . "YouTube is a video sharing service that allows users to watch videos posted by other users and upload videos of their own.”
 
 Tech Terms Computer Dictionary,
 
 http://www. techterms.com/definition/youtube (last visited Apr. 26, 2011).
 

 [2]
 

 . For convenience, we will refer to the Appel-lees who were nonparties in the circuit court as "the Appellees.” Also, we will refer to Bryan Bly, Crystal Moore, Dhurata Doko, and Vilma Castro as "the individual Appellees.”
 

 [3]
 

 . A "robo-signer” is "[a]n employee of a mortgage servicing company that signs foreclosure documents without reviewing them. Rather than actually reviewing the individual details of each case, robo-signers assume the paperwork to be correct and sign it automatically, like robots.”
 
 Investopedia,
 
 http://www. investopedia.com/terms/r/robo-signer.asp (last visited Apr. 28, 2011).
 

 [4]
 

 . For reasons unexplained in our limited record, Mr. Forrest apparently did not post the video deposition of Vilma Castro on YouTube.
 

 [5]
 

 . Rule 1.610(d) provides that "[a] party against whom a temporary injunction has been granted may move to dissolve or modify it at any time.... [T]he motion shall be heard within 5 days after the movant applies for a hearing on the motion.”
 

 [6]
 

 . Florida Rule of Civil Procedure 1.280(b)(1) similarly provides as follows:
 

 Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
 

 The Florida Supreme Court has also observed that " ‘the objective in promulgating the Florida [Rules of Civil Procedure] has been to harmonize our rules with the federal rules.’ Thus, we look to the federal rules and decisions for guidance in interpreting Florida’s civil procedure rules.”
 
 Gleneagle Ship Mgmt. Co. v. Leondakos,
 
 602 So.2d 1282, 1283-84 (Fla.1992) (citations omitted) (quoting
 
 Miami Transit Co. v. Ford,
 
 155 So.2d 360, 362 (Fla.1963)).
 

 [7]
 

 . The courts have shown more reluctance to limit the dissemination of video depositions in cases involving current or former public officials.
 
 See Morrow v. City of Tenaha,
 
 No. 2-08-cv-288-TJW, 2010 WL 3927969, at *4 (E.D.Tex. Oct. 5, 2010) (only Westlaw citation currently available) (observing that "[c]ourts are especially unwilling to issue a protective order merely to spare the defendant embarrassment where, as here, the defendants are public officials and the issues in the case are matters of public concern”);
 
 Padberg v. McGrath-McKechnie,
 
 No. CV-00-3355 RJD SMG, 2005 WL 5190385, at *2-*3 (E.D.N.Y. Apr. 27, 2005) (not reported in F.Supp.2d) . (declining to prohibit the release of former Mayor Rudolph Giuliani’s videotaped deposition to the press because of public interest in the case, but prohibiting the parties and their counsel from making improper use of the deposition by selling it or using it for commercial gain);
 
 Condit v. Dunne,
 
 225 F.R.D. 113, 119-20 (S.D.N.Y.2004) (declining to prohibit dissemination of the defendant television commentator’s videotaped deposition, in part, because of public interest in a former congressman’s defamation action against the defendant);
 
 Flaherty v. Seroussi,
 
 209 F.R.D. 295, 300 (N.D.N.Y.2001) (holding that a former mayor defendant failed to establish good cause for a protective order restricting the use and reproduction of his video deposition based upon the potential for embarrassment before his constituents in light of the public interest in unfettered access to court proceedings, "particularly when they involve elected officials and the performance of their governmental responsibilities”). In this case, the individual Appellees are private citizens with no public role. This fact tends to support the circuit court's issuance of the temporary injunction.